No. 103,304

STATE OF KANSAS, *Appellee*, v. MELVIN D. FRIERSON, *Appellant*.
(319 P.3d 515)

Opinion filed February 28, 2014.

*Heather Cessna,* of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Lesley A. Isherwood,* assistant district attorney, argued the cause, and *Nola Tedesco Foulston,* district attorney, and *Steve Six,* attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

BEIER, J.: This case arises from an attack on Otis Webb in April 2008. After answering his door, Webb was hit in the mouth and knocked to the ground. While one attacker pinned Webb down, the other dug through Webb's pockets and stole $950. During the altercation, Webb knocked a cap off of the head of one of the intruders. DNA collected from the cap connected defendant Melvin Frierson to the attack.

At Frierson's trial on charges of aggravated robbery and aggravated burglary, Frierson objected to the admission of the cap, arguing that its chain of custody had been broken. The district court overruled the objection and admitted the cap. A jury found Frierson guilty on both counts. At sentencing, the district court judge ordered Frierson to pay $950 in restitution and held any further amount of restitution open for 30 days to determine Webb's dental expenses. A subsequent order, entered by the district judge without further hearing, increased Frierson's restitution amount to $1,262.

Frierson appealed, and the Court of Appeals affirmed in *State v. Frierson*, No. 103,304, 2011 WL 4716340 (Kan. App. 2011) (unpublished opinion). We granted Frierson's petition for review on the same six issues he raised before the Court of Appeals.

## FACTUAL AND PROCEDURAL BACKGROUND

On the night of the attack, Webb was at home when he heard a knock at his door. Webb answered the door and saw a man, later identified as Richard Davis, standing at his front door. Davis asked Webb if an "old white man" lived at the residence. Webb, an elderly black man, said no. Davis turned around and walked toward a car parked in front of Webb's residence. Webb shut and locked his door.

Moments later, Webb heard a second knock. Davis was again standing at the front door when Webb answered. This time, a second man, later identified as Frierson, rushed Webb and hit him in the mouth with something hard. Both men then tackled Webb. Frierson held Webb down while Davis rifled through Webb's pock-

ets and removed $950. Frierson and Davis then left the home, and law enforcement officers arrived shortly.

The blow to Webb's mouth dislodged at least one of his front teeth. Webb would eventually testify that he had four more teeth removed after the attack. He also would testify, however, that his dentist had told him his "gums were bad and all [his] teeth needed to come out."

The cap left by the intruders at Webb's home was collected by an investigating officer and placed in an evidence bag. The officer was not available to testify at Frierson's trial. Frierson's pretrial motion in limine to suppress evidence of the cap because of a break in its chain of custody was unsuccessful, as was his trial objection based on lack of foundation. Pretrial, the district judge explained that the chain of custody issue went to the weight of the cap evidence rather than its admissibility.

At the close of evidence at trial, Frierson requested a battery instruction as a lesser included offense on the aggravated robbery charge. The district judge rejected the request. On the aggravated burglary count, the judge instructed the jury that, in order to find Frierson guilty, it had to agree that Frierson "knowingly entered into or remained in [Webb's residence]." The jury found Frierson guilty of both charged offenses.

On July 22, 2009, the district judge sentenced Frierson to a total prison term of 216 months. The district judge also ordered Frierson to pay $950 to Webb as restitution. Although the judge had documentation of Webb's dentist bills, it was unclear what percentage of those bills was related to the attack and what percentage was attributable to preexisting dental disease. With the agreement of both parties, the judge held the restitution issue open for 30 days so that the State and Frierson could settle on the correct amount. The district judge informed Frierson that he had 10 days in which to file an appeal. Frierson filed his notice of appeal on July 23, 2009, designating the judgment and sentence of the district court as the orders he appealed from. On August, 19, 2009, the judge filed a restitution order requiring Frierson to pay Webb $1,262. Neither Frierson nor his counsel had attended any court hearing on the subject of restitution after July 22, 2009. But de-

fense counsel signed the July order, which said nothing about whether Frierson had waived his right to be present at sentencing.

Frierson raised six issues before the Court of Appeals, which affirmed his convictions and sentence in *Frierson*, 2011 WL 4716340, at *5.

First, Frierson argued that there was insufficient evidence to prove the alternative means of aggravated burglary as charged by the State. The panel explained that "to convict on the charge of aggravated burglary, the jury must have found that Frierson knowingly entered into *or remained within* Webb's residence at the time of the crime." 2011 WL 4716340, at *1. Frierson conceded that the State had proved that he entered Webb's house, but he argued there was insufficient evidence to prove that he had "remained within" the house. Frierson urged the panel to interpret the alternative means of committing aggravated burglary under K.S.A. 21-3716 as mutually exclusive. Relying on *State v. Gutierrez*, 285 Kan. 332, 337, 172 P.3d 18 (2007), in which this court held the opposite, the panel concluded that there was sufficient evidence that Frierson intended to commit a theft as he remained within Webb's house. *Frierson*, 2011 WL 4716340, at *2.

Second, Frierson claimed that the district judge erred by denying his motion in limine to exclude the baseball cap from evidence. Because the officer who collected the cap was unavailable to testify, which created a break in the evidence supporting the cap's chain of custody, Frierson argued that there was no reasonable certainty the cap had not been materially altered. Employing an abuse of discretion standard of review, the panel concluded that the district judge did not err. The panel cited caselaw holding that any break in the chain of custody goes to the weight of the evidence rather than its admissibility. 2011 WL 4716340, at *2-3.

Third, Frierson asserted that the district court erred when it denied his request to instruct the jury on battery as a lesser included offense of aggravated robbery. Frierson relied on *State v. Clardy*, 252 Kan. 541, 847 P.2d 694 (1993), in which this court held that substantial evidence supported an instruction on battery as a lesser included offense of aggravated robbery. The panel, however, discounted the precedential viability of *Clardy*, because it

relied on an older version of K.S.A. 21-3107. Under the more recent version of the statute, "the appropriate analysis is to determine whether all elements of battery are identical to some of the elements of aggravated robbery." *Frierson*, 2011 WL 4716340, at *3. Because some of the elements of battery are not elements of aggravated robbery, battery is not a lesser included offense of aggravated robbery. Accordingly, the panel held that the district judge did not err when he did not give the instruction. 2011 WL 4716340, at *4.

Fourth, Frierson asserted entitlement to reversal under the cumulative error doctrine. Because none of Frierson's trial error arguments had been successful, the panel found Frierson's cumulative error argument unpersuasive. 2011 WL 4716340, at *4.

Moving to sentencing, Frierson argued that the district judge lacked subject matter jurisdiction to modify restitution by the August 19, 2009, sentencing order. The panel held that *State v. Cooper*, 267 Kan. 15, 17-19, 997 P.2d 960 (1999) (district court retains jurisdiction when setting restitution amount at later date), controlled. *Frierson*, 2011 WL 4716340, at *4.

Finally, Frierson argued that the district judge erred when he used Frierson's criminal history to determine sentence without first having that history determined by the jury. The panel cited *State v. Ivory*, 273 Kan. 44, 46-48, 41 P.3d 781 (2002), and ruled to the contrary. *Frierson*, 2011 WL 4716340, at *5.

## DISCUSSION

### Sufficiency of the Evidence on Aggravated Burglary

"Issues of statutory interpretation and construction, including issues of whether a statute creates alternative means, raise questions of law reviewable de novo on appeal." *State v. Brown*, 295 Kan. 181, 193-94, 284 P.3d 977 (2012).

"When sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after reviewing all the evidence in a light most favorable to the prosecution, the appellate court is convinced a rational factfinder could have found the defendant guilty beyond a reasonable doubt. Appellate courts do not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations." *State v. Qualls*, 297 Kan. 61, Syl. ¶ 1, 298 P.3d 311 (2013).

Under K.S.A. 22-3421, a criminal defendant has a statutory right to a unanimous jury verdict. See *State v. Rojas-Marceleno*, 295 Kan. 525, Syl. ¶ 13, 285 P.3d 361 (2012); *State v. Wright*, 290 Kan. 194, 201, 224 P.3d 1159 (2010).

"In *State v. Timley*, 255 Kan. 286, 289, 875 P.2d 242 (1994), this court explained:

" ' "In an alternative means case, where a single offense may be committed in more than one way, there must be jury unanimity as to guilt for the single crime charged. Unanimity is not required, however, as to the means by which the crime was committed so long as substantial evidence supports each alternative means." '

" 'Because jury unanimity is not required as to the means by which an alternative means crime is committed, unanimity instructions are not required in alternative means cases.' *Rojas-Marceleno*, 295 Kan. at 544. Nevertheless, the State must meet a 'super-sufficiency of the evidence' requirement, *i.e.*, present sufficient evidence to permit a jury to find each means of committing the crime beyond a reasonable doubt. *Rojas-Marceleno*, 295 Kan. at 544. If the State fails to present sufficient evidence to support each means, reversal is required. *Rojas-Marceleno*, 295 Kan. at 544." *State v. Newcomb*, 296 Kan. 1012, 1014, 298 P.3d 285 (2013).

"Ordinarily, the first step in analyzing an alternative means case is to determine whether the case truly presents an alternative means issue." *Rojas-Marceleno*, 295 Kan. at 544. At the time of the offenses in this case, K.S.A. 21-3716 defined aggravated burglary as "knowingly and without authority entering into or remaining within any building . . . in which there is a human being, with intent to commit a felony, theft or sexual battery therein." In *State v. Cook*, 286 Kan. 1098, 1107, 191 P.3d 294 (2008), this court held: "Where the jury is instructed that the single offense of aggravated burglary may be committed by either the unauthorized 'entering into' or 'remaining within' a structure, an alternative means case has been presented." The State does not argue that this holding was in any way affected by our recent decision in *Brown*, 295 Kan. at 194 (clarifying test for identifying whether a statute sets out alternative means). Accordingly, we move to a determination of whether the State presented sufficient evidence at trial that Frierson both entered into and remained within Webb's residence.

Frierson concedes that the State proved he entered into the home, but he argues that there was no evidence he remained within it.

In *Gutierrez*, this court held that "entering into" and "remaining within" refer to legally distinct factual situations. 285 Kan. 332, Syl. ¶ 2.

"The entering into element of a burglary or aggravated burglary is satisfied when the evidence shows that a defendant crossed the plane of a building's exterior wall. Remaining within refers to a defendant's presence in the building's interior after any entering into, authorized or unauthorized, has been accomplished." 285 Kan. at 337.

Although legally distinct factual situations, this court rejected an argument that entering into and remaining within are mutually exclusive, *i.e.*, "that both cannot be present in a single case, because remaining within requires initial entry to be authorized." 285 Kan. at 337. This court explained:

"The paradigmatic example of remaining within may occur when (a) a defendant's initial entry into a building was authorized; (b) authority is later withdrawn; and (c) defendant nevertheless stays inside the building. But such a fact pattern is not essential. *A defendant who is unauthorized to enter into a building may continue to be unauthorized while he or she remains within,* unless the person or entity empowered to grant permission has decided upon a change in defendant's status. It also is conceivable that a defendant who is unauthorized to enter into a building may be granted permission to remain within and then be subject to later revocation of that permission." (Emphasis added.) 285 Kan. at 337.

Frierson argues that this court decided *Gutierrez* incorrectly. According to Frierson, under *Gutierrez*, "there can be no 'entering into' without a corresponding 'remaining within' " because "every time a potential burglar enters into a building—or crosses the plane of a building's exterior wall, as it is defined in *Gutierrez*—the burglar necessarily remains within, even if only for a nanosecond." Frierson contends that the "entering into" language in K.S.A. 21-3716 is rendered meaningless under *Gutierrez*. Relying on a canon of statutory construction that presumes that the legislature does not enact meaningless legislation, Frierson argues that "remaining within" must mean "remaining within a building after the authority to be in the building has been revoked." Because the State offered no evidence to suggest that Frierson's authority to be in Webb's

home had been revoked, Frierson insists that there was insufficient evidence to prove the "remaining within" alternative means of aggravated burglary.

Frierson is correct that this court presumes the legislature does not intend to enact useless or meaningless legislation. See *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 918, 296 P.3d 1106 (2013). Equally fundamental is the rule of statutory interpretation that courts are to avoid absurd or unreasonable results. 296 Kan. at 918.

Frierson does not cite authority from any other jurisdiction, but our own research has revealed a split among state courts that have considered whether entering into and remaining within are mutually exclusive statutory concepts.

In *State v. Rudolph*, 970 P.2d 1221, 1228 (Utah 1998), a Utah trial judge instructed the jury that " ' "[b]urglary" is defined as entering or *remaining unlawfully* in a dwelling . . . with the intent to commit a felony, or theft or assault on any person.' " Defendant Henry Lee Rudolph argued that the instruction was erroneous because "remaining unlawfully" applied only when the initial entry was lawful, and the undisputed evidence proved he entered the residence unlawfully. The Supreme Court of Utah rejected his argument, observing that such a construction would lead to anomalous results:

"Rudolph nevertheless argues that our interpretation of the 'remaining unlawfully' provision is incorrect because it was included in our burglary statute for the purpose of reaching those cases where the actor initially enters a building lawfully but then remains there after his or her right to do so has expired for purposes of committing a crime. While this may be true, it does not necessarily follow that the 'remaining unlawfully' provision is confined to those situations where the initial entry was lawful. We believe that such an interpretation would create an anomalous result. For instance, under Rudolph's interpretation of the statute, one who enters lawfully but then remains unlawfully and forms the intent to commit another felony, theft, or assault is guilty of burglary while one who enters unlawfully and thereafter forms that same intent is guilty only of trespass. We are unable to see the distinction between the two scenarios. In our view, the actor in the second scenario is at least as dangerous and culpable as the actor in the first. Therefore, we are not satisfied that our legislature intended such a result when it enacted our current burglary statute." 970 P.2d at 1229.

In at least two other jurisdictions, the courts have construed "remaining" narrowly, restricting its application to situations in which there has been a lawful entry. See, *e.g.*, *State v. Mahoe*, 89 Hawaii 284, 290, 972 P.2d 287 (1998) (defendant's initial entry unlawful; " 'unlawfully remaining' " portion of statute inapplicable). In *Cooper v. People*, 973 P.2d 1234, 1241-42 (Colo. 1999), a one-vote majority of the Supreme Court of Colorado held that "unlawfully remaining" requires a lawful entry as a precursor. The dissent in *Cooper* would have followed the Utah Supreme Court's analysis in *Rudolph*. *Cooper*, 973 P.2d at 1243, 1245-46 (Rice, J., dissenting) (citing K.S.A. 21-3715 [burglary]; *State v. Skelton*, 247 Kan. 34, 51-53, 795 P.2d 349 [1990]). In addition, 1999 amendments to the Colorado burglary statute legislatively overruled *Cooper*, as stated in *People v. Wartena*, 296 P.3d 136, 139-40 (Colo. App. 2012).

This court does not lightly overrule its prior cases. *O'Brien v. Leegin Creative Leather Products, Inc.*, 294 Kan. 318, 343, 277 P.3d 1062 (2012). Moreover, we think the analysis in *Rudolph* appropriately reinforces our approach in *Gutierrez*. The language of K.S.A. 21-3716 does not restrict application of its "remaining within" language to instances in which an initial entry is lawful. Construing it in such a manner would produce an absurd result—granting an unlawful entrant a free pass on aggravated burglary charges if he or she formed the intent to commit a felony, theft, or sexual battery only after inside the relevant structure. In the *Gutierrez* opinion, we explained that "both entering into and remaining within may take longer than a mere moment." 285 Kan. at 337-38. Frierson's argument about what can or must occur in a nanosecond is unpersuasive and does not warrant overruling *Gutierrez*.

With *Gutierrez* firmly in place as the legal standard of proof, we hold that the evidence against Frierson, viewed in the light most favorable to the State, was sufficient to support a "remaining within" aggravated burglary. Frierson charged Webb, hit him in the mouth, and tackled him inside Webb's home. Frierson held Webb down while Davis searched Webb's pockets. Testimony about these facts met the State's burden to demonstrate that Fri-

erson intended to commit a theft as he "remained within" Webb's house.

*Motion in Limine*

As previously noted, the Court of Appeals panel reviewed the district judge's ruling on the motion in limine under an abuse of discretion standard. *Frierson*, 2011 WL 4716340, at *2. This was an incorrect standard of review. We clarified the standard of review on motion in limine rulings in *State v. Shadden*, 290 Kan. 803, 815, 235 P.3d 436 (2010).

"[A] motion in limine may be granted when a district court finds two factors are present: (1) The material or evidence in question will be inadmissible at a trial; and (2) The pretrial ruling is justified as opposed to a ruling during trial because the mere offer or mention of the evidence during trial may cause unfair prejudice, confuse the issues, or mislead the jury; the consideration of the issue during the trial might unduly interrupt and delay the trial and inconvenience the jury; or a ruling in advance of trial may limit issues and save the parties time, effort, and cost in trial preparation. In determining if a pretrial ruling is justified a district court should weigh whether the court will be in a better position during trial to assess the value and utility of evidence and its potential prejudice." 290 Kan. at 816.

An appellate court considers the same two factors on appeal. 290 Kan. at 816.

We explained in *Shadden* that it is inappropriate to apply an abuse of discretion standard to the first motion in limine factor—admissibility. Instead, we apply a multistep evidentiary standard. 290 Kan. at 817.

"Under the multistep evidentiary analysis, the first question is relevance. K.S.A. 60-401(b) defines relevant evidence as evidence that is probative and material. On appeal, the question of whether evidence is probative is judged under an abuse of discretion standard; materiality is judged under a de novo standard. See *State v. Reid*, 286 Kan. 494, 507-09, 186 P.3d 713 (2008). The second step is to determine which rules of evidence or other legal principles apply. On appeal, this conclusion is reviewed de novo. *Boldridge v. State*, 289 Kan. 618, Syl. ¶ 10, 215 P.3d 585 (2009). In the third step of the analysis, a district court must apply the applicable rule or principle. The appellate court's standard of review of this third step varies depending on the rule or principle that is being applied. Some rules and principles grant the district court discretion, while others raise matters of law. *State v. Riojas*, 288 Kan. 379, 383, 204 P.3d 578 (2009). Finally, an analysis under K.S.A. 60-445 may be required, depending on the issue and parties' arguments.

Under that statute, a district judge 'may in his or her discretion exclude evidence if he or she finds that its probative value is substantially outweighed by the risk that its admission will unfairly and harmfully surprise a party who has not had reasonable opportunity to anticipate that such evidence will be offered.' This analysis is reviewed under an abuse of discretion standard. See *Reid*, 286 Kan. at 509." *Shadden*, 290 Kan. at 817-18.

Evaluation of the second factor of the motion in limine test rests in the sound discretion of the district judge and is reviewed for abuse of that discretion. 290 Kan. at 818.

"Judicial discretion is abused if judicial action (1) is arbitrary, fanciful, or unreasonable, *i.e.*, if no reasonable person would have taken the view adopted by the trial court; (2) is based on an error of law, *i.e.*, if the discretion is guided by an erroneous legal conclusion; or (3) is based on an error of fact, *i.e.*, if substantial competent evidence does not support a factual finding on which a prerequisite conclusion of law or the exercise of discretion is based. [Citation omitted.]" *State v. Ward*, 292 Kan. 541, 550, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012).

On the first motion in limine factor, we typically begin by asking whether the evidence—here, the cap—was relevant. But, because Frierson has made no argument to the contrary, we assume relevance and continue our analysis by examining whether the judge correctly identified the governing legal principle or rule of evidence and adhered to it.

Frierson challenged the wholeness of the chain of custody of the cap. The test for chain of custody is whether a reasonable certainty exists that the evidence has not been materially altered. *State v. Horton*, 283 Kan. 44, 62, 151 P.3d 9 (2007). Generally, "[a]ny deficiency in the chain of custody affects the weight of the evidence, not its admissibility." 283 Kan. at 62. The district judge properly identified this governing rule.

A district judge's determination of whether there is a reasonable certainty that a piece of evidence has not been materially altered is reviewed for abuse of discretion. See *State v. Niblock*, 230 Kan. 156, 164-65, 631 P.2d 661 (1981) (admission of evidence not abuse of discretion when defendant challenged chain of custody). Here, the officer who picked up the cap at Webb's home, placed it in an evidence bag, and delivered it to the evidence locker of the Wichita Police Department was unavailable at trial. But Webb identified

the cap as the one worn by Frierson and testified that he had seen an officer pick up the cap and place it in an evidence bag. Detective Lisa Walker testified that she retrieved the cap in its sealed evidence bag from the evidence locker and transported it to the Sedgwick County Forensic Science Center for DNA testing. Walker stated that neither the cap nor the evidence bag appeared to have been disturbed. Shelly Steadman, the DNA lab manager, testified that she received a sealed bag containing the cap. She also testified it did not appear that the bag or the cap had been tampered with in any way. On this evidence, the district judge did not abuse his discretion by ruling that there was a reasonable certainty the cap had not been materially altered. The cap was admissible.

Because Frierson's claim does not meet the first factor of our review of a motion in limine ruling, we need not analyze the second factor. The district judge did not err when he denied Frierson's motion.

## Lesser Included Offense Instruction

For jury instruction issues,

"the progression of analysis and corresponding standards of review on appeal are: (1) First, the appellate court should consider the reviewability of the issue from both jurisdiction and preservation viewpoints, exercising an unlimited standard of review; (2) next, the court should use an unlimited review to determine whether the instruction was legally appropriate; (3) then, the court should determine whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction; and (4) finally, if the district court erred, the appellate court must determine whether the error was harmless, utilizing the test and degree of certainty set forth in *State v. Ward*, 292 Kan. 541, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012)." *State v. Plummer*, 295 Kan. 156, Syl. ¶ 1, 283 P.3d 202 (2012).

During the jury instruction conference, Frierson requested a battery instruction as a lesser included offense of aggravated robbery, preserving this issue for appellate review. See *State v. Llamas*, 298 Kan. 246, 259, 311 P.3d 399 (2013).

The question of whether the requested battery instruction was legally appropriate has been answered by this court on multiple occasions. See, *e.g.*, *Clardy*, 252 Kan. at 547; *State v. Warwick*, 232 Kan. 232, 235, 654 P.2d 403 (1982). But legislative amend-

ments to both the definition of lesser included crimes and the elements of the crime of battery limit the application of these precedents. See *State v. Alderete*, 285 Kan. 359, 362, 172 P.3d 27 (2007) (1998 amendment to K.S.A. 21-3107 "undermined" some preamendment caselaw).

Under K.S.A. 21-3107(2)(b), a crime is a lesser included offense of another offense "where all elements of the lesser crime are identical to some [subset] of the elements of the crime charged." The proper analysis "applies a strict elements test and is limited to a comparison of the abstract elements of the offenses charged." *Alderete*, 285 Kan. 359, Syl. ¶ 2. It does not consider "the factual nuances of a specific case as they may bear on the satisfaction of the statutory elements of both crimes under examination." 285 Kan. 359, Syl. ¶ 2.

At the time of the applicable offenses in this case, K.S.A. 21-3412(a) provided that battery is "(1) [i]ntentionally or recklessly causing bodily harm to another person; or (2) intentionally causing physical contact with another person when done in a rude, insulting or angry manner." K.S.A. 21-3427 defined aggravated robbery as "a robbery, as defined in K.S.A. 21-3426 and amendments thereto, committed by a person who is armed with a dangerous weapon or who inflicts bodily harm upon any person in the course of such robbery." K.S.A. 21-3426 defined robbery as "the taking of property from the person or presence of another by force or by threat of bodily harm to any person."

According to Frierson's Court of Appeals panel:

"[B]attery is a lesser included crime of aggravated robbery if all its elements are identical to some of the elements of aggravated robbery. Therefore, if some elements of a battery charge are not found in aggravated robbery, battery is not a lesser included crime. In examining the battery statute, it is clear that it has several elements that do not exist in the aggravated robbery statute. First, battery may be committed recklessly, whereas aggravated robbery can only be committed intentionally. Another difference is that a battery may include physical contact done in a rude, insulting, or angry manner. Neither of these elements can be found in the aggravated robbery statute, and as a result, battery is not a lesser included crime of aggravated robbery. Therefore, we see no error in the trial court not giving a battery instruction as a lesser included offense of aggravated robbery." *Frierson*, 2011 WL 4716340, at *4.

Frierson argues that "[w]hile battery can be accomplished in multiple ways, when battery is charged under a bodily harm theory in conjunction with aggravated robbery, the identical elements test is met." Instead of focusing solely on K.S.A. 21-3412(a)(1), the applicable subsection, the panel required the elements of all subsections of the battery statute to be found in the definition of aggravated battery. The panel's discussion of the unpursued and irrelevant "rude, insulting, or angry manner" element of K.S.A. 21-3412(a)(2) was unnecessary. Frierson's more narrow focus on the "bodily harm" form of battery, *i.e.*, K.S.A. 21-3412(a)(1), was correct. See *Alderete*, 285 Kan. at 362-64 (court individually compared claimed lesser offense subsections with greater offense; ignored inapplicable subsection).

The panel's emphasis on intent to commit aggravated robbery also reflected a misunderstanding of the intersecting aggravated robbery and robbery statutes. Aggravated robbery requires proof of an intentional act of robbery plus proof of the aggravating element of bodily harm, regardless of whether the bodily harm is intentionally inflicted by the perpetrator. The perpetrator's conduct causing the bodily harm during the course of a robbery may be intentional, reckless, or even negligent. The necessary factual link for aggravated robbery is that between the intentional robbery and the bodily harm, not between the bodily harm and the intent to cause it.

Having addressed the flaws in the Court of Appeals panel's reasoning, we are nevertheless compelled to conclude that it reached the right result. Because there is no intent requirement attached to the infliction of bodily harm in aggravated robbery, all of the elements under K.S.A. 21-3412(a)(1) of battery, which must include bodily harm inflicted either intentionally or recklessly, are not identical to some subset of the elements of aggravated robbery under K.S.A. 21-3427. Thus battery is not a lesser included offense of aggravated robbery, and the instruction sought by Frierson was not legally appropriate in this case. The district court did not err by refusing to give it.

*Cumulative Error*

"Cumulative error, considered collectively, may be so great as to require reversal of a defendant's conviction. The test is whether the totality of the circumstances substantially prejudiced the defendant and denied him or her a fair trial." *State v. Hart*, 297 Kan. 494, 513, 301 P.3d 1279 (2013). " 'Cumulative error will not be found when the record fails to support the errors raised on appeal by the defendant.' [Citations omitted.]" *State v. Stafford*, 296 Kan. 25, 60, 290 P.3d 562 (2012). Nor may a single error constitute cumulative error. 296 Kan. at 60 (citing *State v. Foster*, 290 Kan. 696, 726, 233 P.3d 265 [2010]).

Frierson has failed to establish any trial error occurred. Accordingly, the cumulative error doctrine is inapplicable.

*Subject Matter Jurisdiction to Impose Additional Restitution*

"Statutory interpretation and the determination of jurisdiction involve questions of law over which this court's scope of review is unlimited." *State v. Burnett*, 297 Kan. 447, 451, 301 P.3d 698 (2013).

Frierson argues that the district court was without subject matter jurisdiction to increase the amount of restitution in the order filed August 19, 2009, 28 days after his sentencing hearing. For the reasons set forth in *State v. Hall*, 298 Kan. 978, 319 P.3d 506 (2014), Frierson's argument fails.

Because restitution constitutes a part of a criminal defendant's sentence, its amount can be set only by a district judge in open court with the defendant present. Until any applicable restitution amount is decided, a defendant's sentencing is not complete. *Hall*, 298 Kan. 978, Syl. ¶ 1. A sentencing hearing may be continued or bifurcated so that restitution is ordered at one setting and the amount decided at a later setting. In such instances, a district judge should specifically order the continuance or bifurcation. *Hall*, 298 Kan. 978, Syl. ¶ 2. A defendant may waive his or her right to be present in open court when the judge sets the amount of restitution as part of sentencing. *Hall*, 298 Kan. 978, Syl. ¶ 3.

In this case, the district judge initially ordered restitution and set an amount at Frierson's sentencing hearing. But the judge said

he was holding jurisdiction open, and the parties agreed to a 30-day extension to reach agreement on the correct amount of Webb's dental bill attributable to the crimes. Twenty-eight days later, the judge filed an order including additional restitution for the dental bill. The order was signed by counsel for Frierson.

In *Hall*, we noted that in the past under *State v. Cooper*, 267 Kan. 15, 17-19, 997 P.2d 960 (1999), there have been no " 'magic words' " required to continue a sentencing from one hearing to another and that subsequent orders of restitution entered without further hearing had been treated as fully authorized under the district court's subject matter jurisdiction and in the district judge's discretion. *Hall*, 298 Kan. (slip op. at 12). But such continuances or bifurcations of sentencings cannot be treated so casually in the future. In sentencings that occur after today, if a district judge is in need of additional information to set restitution or decide any other aspect of the sentence to be handed down, the judge should explicitly order a continuance or bifurcation of the hearing. See *Hall*, 298 Kan. (slip op. at 11-12).

Here, everyone involved at the time knew that sentencing had not yet been completed. Because, until today, there were no magic words, and because the judge explicitly held open jurisdiction, and because the parties agreed on a 30-day extension, and because the order was signed by defense counsel and entered within the planned time frame, we are satisfied that the spirit, if not the letter, of the procedure we set out for future cases in *Hall* was satisfied.

We are satisfied here despite the absence of a continued hearing in open court with Frierson present, even though the record contains no explicit waiver of his right to be present. Frierson had been present when the judge and counsel for both sides agreed to a 30-day extension, which resulted in a functional continuance, preserving subject matter jurisdiction. In addition, Frierson's lawyer's signature on the order eventually entered by the judge is a record of agreement, at least to the order's form. Frierson does not argue that the procedure followed in this case violated his right to be present. And an issue not briefed by appellant is deemed waived and abandoned. *State v. Littlejohn*, 298 Kan. 632, 655-56,

316 P.3d 136 (2014). Under these circumstances, we will not vacate the additional restitution award.

*Criminal History Score*

"The interpretation of a sentencing statute is a question of law over which this court exercises unlimited review." *State v. Ardry*, 295 Kan. 733, 735, 286 P.3d 207 (2012).

Frierson argues that the use of his criminal history for sentencing purposes, without proving it to his jury beyond a reasonable doubt, increased his maximum possible penalty for his primary offense in violation of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). Frierson acknowledges that this issue was decided against him in *State v. Ivory*, 273 Kan. 44, 46-48, 41 P.3d 781 (2002), and includes it only to preserve it for federal review. We continue to hold that this issue is without merit before this court.

## CONCLUSION

We affirm the judgments of the Court of Appeals and the district court and affirm Frierson's convictions and sentence.