NOT DESIGNATED FOR PUBLICATION

No. 112,283

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

HENRY DAVIDSON,
*Appellant*.

MEMORANDUM OPINION

Appeal from Reno District Court; TIMOTHY CHAMBERS, judge. Opinion filed December 23, 2015. Affirmed.

*Korey A. Kaul*, of Kansas Appellate Defender Office, for appellant.

*Keith E. Schroeder*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before MALONE, C.J., GREEN and POWELL, JJ.

*Per Curiam*: A jury convicted Henry Davidson of one count of aggravated indecent liberties with a child, an off-grid person felony in violation of K.S.A. 2014 Supp. 21-5506(b)(3)(A), one count of attempted rape, an off-grid person felony in violation of K.S.A. 2014 Supp. 21-5301 and K.S.A. 2014 Supp. 21-5503(a)(3), and one count of aggravated criminal sodomy, an off-grid person felony in violation of K.S.A. 2014 Supp. 21-5504(b)(1). Davidson appeals his convictions, arguing that the trial court erred by allowing the State to admit evidence of his prior bad acts under K.S.A. 2014 Supp. 60-455(d). Davidson also argues that there was insufficient evidence to support his

1

conviction of attempted rape. Finding no merit in Davidson's arguments, we affirm Davidson's conviction.

C.S. was born in 2002. Between October 2010 and September 2012, C.S. lived with her mother, H.S., and H.S.'s boyfriend, Davidson, in a small house in Hutchinson, Kansas. Before moving to Kansas, C.S. had lived with H.S. and Davidson in Nebraska.

In September 2012, C.S. told a friend that Davidson had been sexually abusing her. Although C.S. asked the friend not to tell anyone, her friend told an adult. This eventually led to a police investigation.

As part of the police investigation, C.S. was given a sexual abuse evaluation interview at the Child Advocacy Center at Horizon Mental Health Center. Jane Holzrichter, who specializes in evaluating sexually abused children, interviewed C.S. During the filmed interview, C.S. told Holzrichter that Davidson had touched her private parts, which she identified as her breasts, pubic area, and buttocks. When Holzrichter asked C.S. how many times Davidson had touched her privates, C.S. thought Davidson had touched her about ten times but was not sure. C.S. explained how Davidson would tie her arms and legs to bedposts with white rope so she could not move. C.S. explained that Davidson would take her clothes off when he touched her privates. C.S. stated that Davidson, who is unemployed, usually sexually abused her while her mother was at work. C.S. specifically remembered an instance in Nebraska where Davidson sexually abused her while everyone was away at work. Regarding this incident, C.S. stated that Davidson touched her pubic area with his penis and his mouth but did not tie her down because he could not find a rope.

Using anatomically correct dolls, C.S. showed Holzrichter how Davidson would force her to perform oral sex on him and how Davidson would forcibly perform oral sex on her. C.S. showed Holzrichter how Davidson would touch her pubic area with his

2

penis. C.S. explained that Davidson would hurt her privates with his fingers because he had long fingernails.

C.S. was able to provide Holzrichter with details about a time when Davidson was sexually abusing her but was forced to stop. According to C.S., one time while her mother was at work, Davidson had taken her clothes off, tied her arms down with white rope, climbed on top of her, and touched her pubic area with his penis. Because her legs were free, C.S. started kicking Davidson so he would stop touching her. C.S. stated that she hurt Davidson, so he climbed off her. Then, right after Davidson had climbed off her, C.S. stated that they heard a car door shut. C.S. explained that her mother had come home unexpectedly because she had forgotten her work keys. C.S. stated that Davidson stopped touching her after she kicked him and her mother came home.

Additionally, during the interview, C.S. told Holzrichter that she and Davidson watched pornographic videos together. When asked where Davidson kept the pornographic videos, C.S. stated that Davidson hid the pornography in his dresser drawer. C.S. also stated that Davidson would make her pose naked in different positions as he took photos of her with his cell phone.

Following the interview, the police obtained and executed a search warrant on Davidson's house. The police found the pornographic videos in Davidson's dresser drawer. The police also seized Davidson's cell phone. Upon searching the cell phone, the police retrieved a photo taken on October 1, 2010, but had since been deleted. The photo depicted a man wearing camouflage pants forcing his penis between the legs of a young girl who wore nothing but a t-shirt. It seems this photo only showed the man and the young girl from the waist down. Based on the clothing of the man and the young girl, however, H.S. was able to identify the man in the photo as Davidson and the young girl in the photo as C.S. H.S. also gave the police a pair of Davidson's camouflage pants. Davidson's camouflage pants matched the camouflage pants of the man in the photo.

3

Based on this evidence, the State charged Davidson with one count of aggravated indecent liberties with a child, one count of rape, and one count of aggravated criminal sodomy. The State alleged that these crimes occurred on or between October 2010 and September 15, 2012.

Before the jury trial, Davidson moved in limine to exclude any evidence regarding his sexual abuse of C.S. in Nebraska. Citing K.S.A. 2014 Supp. 60-455(d), the trial court denied this motion because it was "propensity evidence."

At Davidson's March 2014 trial, the State admitted into evidence the video of C.S.'s sexual abuse evaluation interview, the photo of a man forcing his penis between a young girl's legs, and Davidson's camouflage pants. The State also presented testimony from C.S., H.S., Holzrichter, and the investigating police officer.

As in her sexual abuse evaluation interview, C.S. testified that Davidson had touched her "privates" with his penis and hands. C.S. testified that Davidson had put his penis in her mouth. C.S. also testified that Davidson would tie her down with rope and make her pose for photos. Moreover, C.S. testified that when Davidson was touching her he would force her to say, "Fuck me daddy." Regarding whether Davidson had ever inserted his penis into her vagina, the following exchange between the prosecutor and C.S. occurred:

"Q. What would he touch you with?
"A. His hands.
"Q. Would he touch you with anything else?
"A. His private part.
"Q. Would that be the front part below the waist?
"A. Yes.
"Q. Do you know the difference between inside and outside?
"A. Yes.

4

"Q. Would his private part stay on the outside or the inside?

"A. The outside.

"Q. Okay. You understand on your front private part, your pee pee, there's an inside and outside?

"A. Yes.

"Q. Is that correct?

"A. Yes.

"Q. So it would stay on the outside?

"A. Yes.

"Q. And would sometimes, would anything come out of his—

"A. Yes.

"Q. —his private part?

"A. Yes.

"Q. What would come out?

"A. It was white.

"Q. Did his private part ever go inside you, inside your private part?

"A. No."

Based on the camouflage pants the man was wearing, H.S. testified that the man in the photo retrieved from Davidson's phone was Davidson. Based on the t-shirt the young girl was wearing, H.S. testified that the young girl in the photo retrieved from Davidson's phone was C.S. H.S. further testified that on October 1, 2010, the date the photo was taken, H.S. had left C.S. in the care of Davidson while she attended job training in Wichita.

Davidson had only one witness testify on his behalf. Davidson's friend, Nathan Crowe, testified that he had been to Davidson's house many times and never saw anything inappropriate between Davidson and C.S. Davidson also admitted three photos of his house into evidence.

During the jury instruction conference outside the presence of the jury, the trial judge told counsel that he was including an instruction on attempted rape given that C.S.

had testified that Davidson had kept his private outside of her private. Both parties agreed that the jury should be instructed on attempted rape as a lesser included offense of rape.

The jury ultimately found Davidson guilty of aggravated indecent liberties with a child, attempted rape, and aggravated criminal sodomy. For each count, the trial court sentenced Davidson to life in prison with a mandatory minimum of 25 years before parole eligibility. The trial court ordered that each count be served concurrently.

*Did the Trial Court Err By Allowing the State to Admit Evidence of Davidson's Prior Bad Acts Under K.S.A. 2014 Supp. 60-455(d)?*

Davidson argues that the trial court erred by allowing the State to introduce evidence that he had previously sexually abused C.S. Specifically, Davidson takes issue with the admission of statements made by C.S. during her filmed sexual abuse evaluation interview that Davidson had touched her privates in Nebraska while everyone was away at work. Davidson argues that this evidence should have been redacted from the video of the interview because the statements were irrelevant. Davidson also argues that this error was not harmless because the State's entire case against him rested on C.S.'s interview and testimony.

When an appellate court reviews a trial court's decision to admit evidence, it first determines if the evidence is relevant. *State v. Smith*, 299 Kan. 962, 969, 327 P.3d 441 (2014). "'Relevant evidence' means evidence having any tendency in reason to prove any material fact." K.S.A. 60-401(b). "Relevant evidence is both: (1) material, *i.e.,* the fact has a legitimate and effective bearing on the decision of the case and is in dispute; and (2) probative, *i.e.,* has 'any tendency in reason to prove' the fact." *Smith*, 299 Kan. at 969 (quoting *State v. Boleyn,* 297 Kan. 610, 622, 303 P.3d 680 [2013]). Whether evidence is material is reviewed de novo and whether evidence is probative is reviewed for abuse of discretion. *Smith*, 299 Kan. at 969. An abuse of discretion occurs when the trial court's

6

ruling is unreasonable, when the trial court's ruling is based on an error of law, or when the trial court's ruling is based on an error of fact. *Smith*, 299 Kan. at 970.

If the evidence is relevant, then an appellate court determines, de novo, which rules of evidence or other legal principles govern the admission of the evidence at issue. *State v. Frierson*, 298 Kan. 1005, 1015, 319 P.3d 515 (2014). Appellate review of the trial court's application of the pertinent legal rules and principles hinges upon whether the rule or principle allows the trial court to exercise its discretion, or whether the rule raises questions of law. *Frierson*, 298 Kan. at 1015. Then, an appellate court must review whether the probative value of relevant evidence outweighs its potential for undue prejudice for an abuse of discretion. *Smith*, 299 Kan. at 970.

Under K.S.A. 2014 Supp. 60-455(a), evidence that a person previously committed a crime "is inadmissible to prove such person's disposition to commit crime or civil wrong as the basis for an inference that the person committed another crime or civil wrong on another specified occasion." Nevertheless, K.S.A. 2014 Supp. 60-455(d) states:

> "Except as provided in K.S.A. 60-445, and amendments thereto, in a criminal action in which the defendant is accused of a sex offense under articles 34, 35 or 36 of chapter 21 of the Kansas Statutes Annotated, prior to their repeal, or articles 54, 55 or 56 of chapter 21 of the Kansas Statutes Annotated, or K.S.A. 21-6104, 21-6325, 21-6326 or 21-6418 through 21-6421, and amendments thereto, evidence of the defendant's commission of another act or offense of sexual misconduct is admissible, and may be considered for its bearing on any matter to which it is relevant and probative."

Thus, under K.S.A. 2014 Supp. 60-455(d), evidence of a defendant's prior sexual misconduct may be admitted for any relevant and probative matter, including the defendant's propensity to commit sex crimes.

7

*Was the Evidence Relevant and Probative?*

In this case, Davidson moved in limine to exclude any evidence that he sexually abused C.S. in Nebraska. Davidson moved to exclude this evidence because during C.S.'s filmed sexual abuse evaluation interview, C.S. told Holzrichter that Davidson started sexually abusing her 5 years ago while living together in Nebraska. C.S. also told Holzrichter that one time while living in Nebraska, Davidson touched her privates with his penis and his mouth but did not bind her down because he could not find the white rope. The trial court allowed the State to admit this evidence because "propensity evidence is specifically allowed in sexual offenses now by the amendment of 60-455." Outside of this statement, the trial court did not explain why it found that this evidence was relevant or probative. At Davidson's trial, C.S. never testified about the alleged sexual abuse in Nebraska, but the State admitted into evidence C.S.'s filmed sexual abuse evaluation interview.

Although the trial court should have provided a better explanation as to why the evidence that Davidson sexually abused C.S. in Nebraska was admissible, the trial court did not err by allowing the State to admit this evidence under K.S.A. 2014 Supp. 60-455(d). Clearly, the evidence that Davidson allegedly abused C.S. in Nebraska was relevant. This evidence supports that Davidson had a history of sexually abusing C.S. As a result, this evidence has a tendency to prove that Davidson continued to sexually abuse C.S. in Kansas.

Davidson, however, asserts that this evidence was irrelevant because C.S.'s statements did not prove that he had a propensity to sexually abuse C.S. Davidson asserts that to prove propensity, a prior bad act "must be similar enough to the charged acts that the admission of the prior bad acts would contribute to a reasonable belief that the defendant committed the charged acts." Davidson contends that C.S. provided too little

8

information about the alleged sexual abuse that occurred in Nebraska for the evidence to be relevant in his case.

Yet, Davidson seems to ignore that he was charged with aggravated indecent liberties with C.S., attempted rape of C.S., and aggravated sodomy of C.S., and C.S.'s statement alleged that Davidson had sexually abused her in the past. Thus, C.S.'s allegations of any improper sexual conduct that occurred in Nebraska would be relevant. Additionally, although C.S. did not provide Holzrichter with many details of the sexual abuse that allegedly occurred in Nebraska, C.S. statements about the alleged sexual abuse in Nebraska were specific enough to be relevant in determining whether he committed the sex crimes in Kansas. Davidson seems to ignore that C.S.'s statements about the alleged abuse in Nebraska were consistent with her statements about the sexual abuse that occurred in Kansas. C.S. stated that Davidson touched her privates with his private and his mouth while everyone was away at work. This is consistent with C.S.'s statements regarding the sexual abuse that took place in Kansas where Davidson would touch her privates with his private and his mouth while her mother was at work. Additionally, C.S.'s statements about the sexual abuse in Nebraska were consistent with the photo retrieved from Davidson's phone depicting a man forcing his penis between the legs of a young girl. Again, H.S. identified the people in the photo as Davidson and C.S respectively. Consequently, Davidson's argument that C.S.'s statements were irrelevant because her statements about the alleged sexual abuse in Nebraska were not specific enough to determine whether this event was sufficiently similar to the abuse in Kansas fails.

Moreover, on appeal, Davidson does not argue that the potential for undue prejudice from C.S.'s statements outweighed the probative value of the statements. An issue not briefed by an appellant is deemed waived and abandoned. *State v. Boleyn*, 297 Kan. 610, 633, 303 P.3d 680 (2013). Thus, Davidson has abandoned this issue on appeal.

9

Even if Davidson had not abandoned this issue, however, any potential for undue prejudice from C.S.'s statements would not outweigh the probative value of the statements. When evidence of prior sexual abuse comes into evidence through a third-party witness, that evidence is more prejudicial than if the evidence came in through the testimony of the victim of the alleged crime. This is because the third-party witness's testimony corroborates the victim's accusation. If the alleged victim testifies about the defendant committing prior acts of sexual abuse, though, this is far less prejudicial because the jury makes a credibility determination regarding only one person. That is, in most circumstances, the jury will either believe the victim's account of the defendant's sexual abuse, including any testimony about prior bad acts, or the jury will disbelieve the victim's account of the defendant's sexual abuse, including any testimony about prior bad acts. In this case, the evidence of Davidson's earlier sexual abuse in Nebraska came into evidence through C.S.'s statements to Holzrichter at her filmed sexual abuse evaluation interview. As a result, any prejudicial effect that C.S.'s statements could have had on the jury was very small because C.S.'s accusations about what occurred in Nebraska did not make her accusations about what occurred in Kansas more credible.

Accordingly, under K.S.A. 2014 Supp. 60-455(d), the trial court did not err by allowing the State to admit evidence that Davidson had sexually abused C.S.

*Even If the Trial Court Erred, Was the Error Harmless?*

Finally, assuming arguendo that the trial court erred by allowing the State to admit evidence that Davidson allegedly sexually abused C.S. in Nebraska, this error was harmless. Under K.S.A. 2014 Supp. 60-261, an error is harmless when in light of the entire record, there is no reasonable probability that the error affected the outcome of the trial. See *Smith*, 299 Kan. at 976-77.

10

Again, Davidson was convicted of aggravated indent liberties with a child under K.S.A. 2014 Supp, 21-5506(b)(3)(A), attempted rape under K.S.A. 2014 Supp. 21-5301 and K.S.A. 2014 Supp. 21-5503(a)(3), and aggravated criminal sodomy under K.S.A. 2014 Supp. 21-5504(b)(1). Under K.S.A. 2014 Supp, 21-5506(b)(3)(A), aggravated indecent liberties with a child is engaging in lewd fondling or touching of the person of either the child under 14 years old or the offender, "done or submitted to with the intent to arouse or to satisfy the sexual desires of either the child or the offender." Under K.S.A. 2014 Supp. 21-5301 and K.S.A. 2014 Supp. 21-5503(a)(3) an attempted rape occurs when a person makes an overt act towards committing a rape of a child under 14 years old "but fails in the perpetration thereof or is prevented or intercepted in executing such crime." Under K.S.A. 2014 Supp. 21-5504(b)(1), aggravated criminal sodomy is sodomy with a child under 14 years old.

In this case, there was substantial evidence to support Davidson's convictions of aggravated indecent liberties with a child, attempted rape, and aggravated criminal sodomy. During C.S.'s sexual abuse evaluation interview, C.S. told Holzrichter about several different times that Davidson touched her privates while her mother was not home. C.S. identified her privates as her breasts, pubic area, and buttocks. She also told Holzrichter that Davidson would touch her privates with his penis. With the anatomically correct dolls, C.S. explained to Holzrichter how Davidson would force her to perform oral sex on him and how Davidson would perform oral sex on her. C.S. told Holzrichter that Davidson would make her pose naked in different positions as he photographed her with his phone. Moreover, the police found a photo of a man wearing camouflage pants forcing his penis between a young girl's legs on Davidson's phone. H.S. identified the people in the photo as Davidson and C.S. and provided Davidson's identical camouflage pants to the police.

Based on this evidence, if the trial court had erred by allowing the State to admit C.S.'s statements about Davidson's alleged acts of sexual abuse in Nebraska, this error

11

was harmless because there is no reasonable probability that it affected the jury's finding that Davidson was guilty of aggravated indecent liberties with a child, attempted rape, or aggravated criminal sodomy. This is especially true given that the jury clearly made a credibility determination that C.S. was telling the truth about the sexual abuse she endured while in Kansas. Because the jury made a credibility determination that C.S. was telling the truth about the sexual abuse she endured while in Kansas, it seems highly unlikely that the jury would have reached a different result had C.S.'s statements regarding Davidson's alleged acts of sexual abuse in Nebraska not come into evidence at Davidson's trial.

*Was There Sufficient Evidence to Convict Davidson of Attempted Rape?*

Next, Davidson argues that there was insufficient evidence to convict him of attempted rape. Davidson argues that at C.S.'s sexual abuse evaluation interview, C.S.'s actions and descriptions of what Davidson had done to her were consistent with rape because C.S. inserted the anatomically correct male doll's penis into the anatomically correct female doll's vagina, but at trial, C.S. testified that Davidson kept his private part on the outside of her private part. Davidson also asserts that there was no evidence presented that he "wanted to rape [C.S.], but was unable to," "that he could not achieve an erection," or "that he tried, but had difficulty inserting his penis" into C.S. Thus, according to Davidson, "the jury was left with two choices: [he] penetrated [C.S.'s] vagina and was guilty of rape or there was no penetration and [he] was not guilty of rape." As detailed below, however, Davidson has mischaracterized the evidence by stating that there was only evidence of a rape or nothing at all.

When the sufficiency of evidence is challenged in a criminal case, an appellate court will uphold a defendant's conviction if after reviewing all the evidence in the light most favorable to the prosecution, the court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Williams*, 299 Kan.

12

509, 525, 324 P.3d 1078 (2014). In making this review, an appellate court will not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations. *Williams*, 299 Kan. at 525.

Under K.S.A. 2014 Supp. 21-5503(a), a rape is "sexual intercourse with a child who is under 14 years of age." Under K.S.A. 2014 Supp. 21-5301(a), an attempt is "any overt act toward the perpetration of a crime done by a person who intends to commit such crime but fails in the perpetration thereof or is prevented or intercepted in executing such crime." Thus, for Davidson's attempted rape conviction to be upheld, there must be sufficient evidence that Davidson took an overt act toward having sexual intercourse with C.S. but failed in the perpetration thereof or was prevented or intercepted in executing the rape.

In determining whether there was sufficient evidence to support Davidson's attempted rape conviction, it is first important to point out that Davidson has mischaracterized C.S.'s actions with the anatomically correct dolls at her sexual abuse evaluation interview. Davidson asserts that there was evidence of a rape or nothing at all because he argues that C.S. placed the male doll's penis into the female doll's vagina. Although Davidson argues that C.S. placed the male doll's penis into the female doll's vagina, it is unclear from the filmed interview if C.S. actually inserted the male doll's penis into the female doll's vagina. Instead, what is clear is that C.S. placed the male doll on top of the female doll and made the male doll's penis touch the female doll's pubic area. Moreover, C.S. never told Holzrichter that Davidson put his penis inside her vagina. During the interview, C.S. generally used the word "touch"—*i.e.* Davidson would touch her private with his private. Thus, Davidson has mischaracterized this evidence to the court.

More importantly, at Davidson's trial, there was sufficient evidence presented for a rational factfinder to find Davidson guilty beyond a reasonable doubt of attempted rape.

13

Again, C.S. testified to the following: Davidson had taken her clothes off and touched her privates with his penis or fingers multiple times; Davidson had made her say, "Fuck me daddy," as he touched her privates with his penis; Davidson had restrained her with rope while touching her; and she had tried to fight Davidson off but he was too strong. Additionally, regarding the photo retrieved from Davidson's cell phone in which a man wearing camouflage pants was forcing his penis between the legs of a young girl wearing nothing but a t-shirt, H.S. identified the man as Davidson and the young girl as C.S.

Furthermore, during C.S.'s filmed sexual abuse evaluation interview that was admitted into evidence, C.S. told Holzrichter that while living in Hutchison, Davidson would take her clothes off, tie her to the bed posts with white rope, and touch her pubic area with his penis. Using the anatomically correct dolls, C.S. showed Holzrichter how Davidson would touch her pubic area with his penis. C.S. additionally told Holzrichter about a time when Davidson had tied down her arms but not her legs, so she kicked him so he would stop touching her. C.S. explained to Holzrichter that between the kicking and her mother unexpectedly coming home to get her work keys, Davidson was unable to continue the sexual abuse.

Accordingly, at Davidson's trial, the State presented evidence that Davidson would forcibly touch C.S.'s pubic area with his fingers and penis after tying C.S.'s down with white rope while forcing her to say, "Fuck me daddy." Clearly, this evidence can be construed as an overt act towards having sexual intercourse with C.S. Moreover, at Davidson's trial, the State presented evidence that C.S. would fight back. This includes C.S.'s account of when Davidson was forced to stop sexually abusing her after she kicked him and her mother came home unexpectedly. Undoubtedly, a rational factfinder could have construed this as an intervening act that prevented Davidson from raping C.S.

14

As a result, in the light most favorable to the prosecution, a rational factfinder could have found Davidson guilty of attempted rape beyond a reasonable doubt. Consequently, we affirm Davidson's conviction of attempted rape.