No. 104,245

STATE OF KANSAS, *Appellee*, v. FRANCIS SMITH, *Appellant*.

(327 P.3d 441)

Opinion filed June 27, 2014.

*Meryl Carver-Allmond,* of Kansas Appellate Defender Office, argued the cause and was on the briefs for appellant.

*Terri L. Johnson,* county attorney, argued the cause, and *Kristafer R. Ailslieger,* deputy solicitor general, and *Derek Schmidt,* attorney general, were with her on the briefs for appellee.

The opinion of the court was delivered by

BILES, J.: Francis Smith directly appeals his convictions of four sex offenses. The charges stem from an incident during which Smith touched two girls, who were 13 and 15 years old, while photographing them in provocative poses wearing two-piece, bikini-style bathing suits. Smith orchestrated the photo session and had the teenage girls touch each other for some of the photographs. He was convicted of two counts of aggravated indecent liberties with a child and two counts of indecent liberties with a child. A majority of the court affirms his convictions, but we remand on a sentencing issue.

Smith raises seven issues: (1) whether the trial court erroneously admitted prior crimes evidence to prove motive and intent; (2) whether the trial court erroneously admitted photographs of the covers of pornographic magazines and videos taken from his house; (3) whether the trial court's jury instruction on burden of proof was clearly erroneous; (4) whether the sentencing court erroneously used a prior conviction for multiple sentencing purposes; (5) whether the sentencing court exceeded its authority by entering orders prohibiting contact with the victims; (6) whether the sen-

tencing court erroneously ordered lifetime electronic monitoring; and (7) whether the sentencing court erroneously imposed lifetime postrelease supervision for the off-grid offenses.

## FACTUAL AND PROCEDURAL OVERVIEW

Smith was charged with and convicted of two counts of aggravated indecent liberties with a child against the 13-year-old victim (H.D.) and two counts of indecent liberties with a child against the 15-year-old victim (M.M.) based on events occurring on May 20, 2008. That day, H.D. and M.M. skipped school and went to Smith's house. Smith had become a family friend after meeting H.D.'s father through work. H.D. and her two older brothers frequently watched movies and played video games at Smith's house.

There is conflicting evidence whether the incident was planned, but Smith took multiple Polaroid photographs of H.D. and M.M. in their bikini swimsuits, which were later shown to H.D.'s father, leading to a police investigation. Twenty-four photographs were admitted into evidence at trial, although some are duplicates. It is necessary to describe the photos to understand their content and context to the issues discussed.

A few photos are of H.D. and M.M. from the waist up in bikini tops. In the remaining photos, H.D. and M.M. had removed their pants and are wearing bikini bottoms. The photos include images of H.D. and M.M. standing with their legs spread apart; sitting or standing with their arms or legs intertwined while pressing their lips together or open-mouthed touching tongues; and some show H.D. and M.M. positioned with their heads towards a wall while their legs are spread open towards the camera. In one photo, H.D. and M.M. are on their hands and knees with their legs spread open towards the camera, their heads turned towards each other with lips pressed together.

A detective interviewed H.D. and M.M. These interviews were recorded and played for the jury. In her interview, M.M. said Smith had already bought H.D. the bikini she wore in the photographs and that "Smith told [H.D.] whenever he bought it that he wanted pictures and [H.D.] said Ok." When asked whether there was anything Smith did or said that the detective should know about, M.M.

said H.D. wanted to wash her hair before taking the pictures and Smith suggested H.D. shower. When asked what M.M. thought he meant, M.M. said Smith was not going to leave "[b]ut once we said that we were just going to wash our hair he said ok I'm going to go to Walgreens." M.M. also said Smith told them to act like they were kissing and told them "that we were hot a lot." She explained she and H.D. were "iffy" about the pictures in which Smith had both girls face the wall so their heads were positioned away from the camera because "he is old and we are young."

When asked if anything happened besides picture taking, M.M. said Smith would adjust their bikini bottoms as they were lying on the floor, which she said "would gross us out" and "it is nasty." When asked whether Smith's hands touched their bottoms, M.M. said "yes and usually whenever [Smith] would be fixing [H.D.]'s he would pull it up or whatever and then he would tap her and he'd go back and take a picture."

M.M. also said that after Smith adjusted their swimsuit bottoms for the picture with them on their hands and knees and their bottoms towards the camera, Smith went back to take the picture and said, "[Y]eah, [H.D.] knows I like young girls." M.M. told the detective Smith later took them to Walmart after giving them $50 each. On the way, Smith asked the girls if their boyfriends would like the pictures more if they were topless and offered them $200 to take pictures with their tops off next time.

In her police interview, H.D. said Smith had suggested taking the photographs to submit to some people in California who could get her and M.M. modeling jobs and that Smith paid each girl $50 after taking the photographs. H.D. denied Smith touched the girls during the photo session but amended this statement later at trial and admitted he had touched them. H.D. said Smith had told her "many times," including "a couple days ago," that he is "interested in young girls."

After interviewing H.D. and M.M, law enforcement officers went to Smith's residence. Smith admitted taking pictures of the girls from their waist up but denied taking the other pictures. He said a lady he did not know, possibly M.M.'s aunt, took the other photographs. Smith acknowledged he paid the girls $50 but denied

the money was for the photographs. He admitted possessing a set of the photographs but said he had disposed of those photographs.

Smith consented to a search of his residence, during which officers discovered and photographed several DVDs and magazines depicting young females in sexual positions and containing titles such as "Barely Legal," "Teenage Nymphos," "Teach the Young, Make them Cum," "Just 18," "Just Popped," "Cherry Pop," "Ripe," and "Wild Cherries." The search also uncovered a DVD entitled "Luxurious," which allegedly depicted a "she-male." As Smith was being arrested and handcuffed after the search, he said he would not have engaged in any improper action with the girls because he was gay and liked "he-shes" or females with male genitalia.

At trial, M.M. testified that Smith began taking the photos in his living room while she and H.D. were wearing bikini tops and jeans. Smith then proposed they act like they were kissing and suggested they take more pictures in an empty bedroom. She said Smith decided how the girls should pose and instructed them to spread their legs apart. And when describing how Smith touched the girls, M.M. testified that at various times Smith "took his finger (indiscernible) [H.D.]'s bottoms and pulled 'em out"; spread their legs further apart; and spread their legs apart while holding their knees. Discussing the photos in which the two teenagers were touching, M.M. described how Smith instructed at different times that she place her leg over H.D.'s, that the girls touch their lips together to look like they were kissing, or that the girls press their arms together. M.M. testified she was not sexually aroused by the photos and that it bothered her when Smith touched her because it was "awkward."

H.D. testified it was Smith's idea to take the pictures and that they had discussed it beforehand. She also contradicted her earlier statement that Smith did not touch her and M.M while he took the photographs. She testified Smith adjusted their swimsuit bottoms and repositioned their legs. When the prosecutor asked, "When you say he adjusted your bottoms, what part of your swimsuit did he adjust?" H.D. responded, "Around the crotch area." H.D. said she believed Smith was sexually aroused when the pho-

tographs were taken because of the way he had H.D. and M.M. position themselves. She said Smith told them not to tell anybody about the photographs; but if anyone asked, they were to say M.M.'s aunt took the photographs.

H.D. further testified that Smith told her on several occasions he loved her and was attracted to young girls. She said Smith on an earlier occasion tried to give her a purple vibrator while she and Smith were alone at his house. She testified Smith said he did not "know if [H.D.] would appreciate [the vibrator] or not or if [H.D.] would accept it, but it's worth it." H.D. said she did not accept the vibrator. One of her brothers later discovered a purple vibrator in Smith's house. Smith also gave H.D. two pair of thong underwear, which she accepted. She testified Smith gave her the underwear shortly after her 13th birthday, explaining that Smith said he "figured since [H.D. was] getting older [she] would probably be getting into things like that." Her brothers later discovered the underwear and threw them away.

H.D.'s sister and brother testified about Smith's relationship with H.D. The sister testified H.D. said she liked going to Smith's house because "he would give her kind of odd jobs, you know, do the dishes for $20 or . . . he would just give her money a lot." H.D. testified that Smith would pay her for "[d]oing small chores, like dishes or just picking up." Smith would also pay H.D.'s brothers money, but H.D. described this as "[n]ot a lot, to do some outside work once in a while." One of H.D.'s brothers described Smith as "always kind of flirty after a while" and said Smith "started to get a little bit too friendly" before he gave H.D. the two thongs.

Smith testified that he took the photographs to give to the girls, who were not going to see each other over the summer. He denied being sexually aroused while taking the photographs.

Prior to trial, Smith moved for an order in limine prohibiting admission of any evidence relating to the pornography discovered at his house, arguing its prejudicial effect outweighed any probative value. The State argued the pornographic magazines and videos were relevant to prove Smith's sexual desires, which was an essential element of the crimes charged. Specifically, the State wanted the evidence to prove Smith was attracted to young girls to con-

tradict his assertion that he was gay. The district court denied the motion.

At trial, photographs of the covers of magazine and DVDs were admitted in conjunction with a detective's testimony about why he took each photograph of this material. In the testimony, the detective referenced each publication's title and generally stated the "woman on the front cover is underdeveloped."

The State filed a pretrial motion to admit Smith's 1993 convictions for aggravated indecent liberties with a child, aggravated criminal sodomy, and rape. The State argued these prior crimes were relevant under K.S.A. 60-455 to show motive and intent. At the hearing on the motion, the State added an argument that the court should follow the newly amended statute, K.S.A. 2009 Supp. 60-455(d). Smith argued that statute was still subject to K.S.A. 60-445 constraint in which the value of the prior convictions evidence was substantially outweighed by the risk of prejudice. In ruling the prior convictions evidence was admissible, the trial court found the prior convictions both relevant and probative of intent and motive.

The State's theory for the first aggravated indecent liberties charge was that Smith "solicited [H.D.] to engage in fondling or touching of the person of another in a lewd manner, with intent to arouse or satisfy the sexual desires of [H.D.], the defendant or another." Its theory for the second was that Smith "fondled or touched the person of [H.D.], in a lewd manner, with intent to arouse or satisfy the sexual desires of either [H.D.], or the defendant or both." Similarly, the State's theory for the first indecent liberties charge was that Smith "solicited [M.M.] to engage in lewd fondling or touching of the person of another with the intent to arouse or to satisfy the sexual desires of [M.M.], the defendant or another." And the State's theory for the second was that Smith "fondled or touched the person of [M.M.], in a lewd manner, with intent to arouse or satisfy the sexual desires of either [M.M.], or the defendant or both." The jury convicted Smith on all four charges.

The district court imposed a hard 40 life sentence for each aggravated indecent liberties with a child conviction and ordered they be served consecutively, *i.e.*, Smith would not be parole eligible for

80 years. The other two grid-box sentences for indecent liberties with a child were imposed to run concurrent to each other and to the hard 40 sentences.

Smith timely appealed directly to this court. We have jurisdiction under K.S.A. 22-3601(b)(1) (maximum sentence of life imprisonment imposed for off-grid crime; appeal docketed prior to July 1, 2011).

## PRIOR CRIMES EVIDENCE

Smith begins by challenging the district court's admission into evidence of his 1993 crimes. He argues this prior crimes evidence was not relevant to establish motive and that, to the extent it was relevant to show his intent, the convictions' remoteness rendered them more prejudicial than probative. The State counters that the evidence was properly admitted under K.S.A. 2009 Supp. 60-455(d); the evidence was also admissible to prove the relevant material issues of motive and intent; and any error in admitting the prior crimes evidence was harmless.

### Standard of Review

Appellate review of a trial court's decision to admit evidence is a two-step process. First, the appellate court determines whether the evidence is relevant. *State v. Phillips*, 295 Kan. 929, 947, 287 P.3d 245 (2012). Evidence is relevant if it has a "tendency in reason to prove any material fact." K.S.A. 60-401(b). "Relevance is established by a material or logical connection between the asserted facts and the inference or result they are intended to establish." *Phillips*, 295 Kan. 929, Syl. ¶ 7. Relevant evidence is both: (1) material, *i.e.*, the fact has a legitimate and effective bearing on the decision of the case and is in dispute; and (2) probative, *i.e.*, has " 'any tendency in reason to prove' " the fact. *State v. Boleyn*, 297 Kan. 610, 622, 303 P.3d 680 (2013) (quoting *State v. Reid*, 286 Kan. 494, 505, 186 P.3d 713 [2008]). Materiality is reviewed de novo, while probativity is reviewed for abuse of discretion. 297 Kan. at 622.

If the evidence is relevant, the court next applies the statutory provisions governing admission or exclusion of evidence. *Phillips*,

295 Kan. at 947. "These rules are applied either as a matter of law or in the exercise of the district court's discretion, depending on the rule in question." *State v. Hughes*, 286 Kan. 1010, 1020, 191 P.3d 268 (2008). Whether the probative value of otherwise relevant evidence outweighs its potential for undue prejudice is reviewed for abuse of discretion. See *Phillips*, 295 Kan. at 949; *State v. Wilson*, 295 Kan. 605, 621, 289 P.3d 1082 (2012).

A district court abuses its discretion when: (1) no reasonable person would take the view adopted by the judge; (2) a ruling is based on an error of law; or (3) substantial competent evidence does not support a finding of fact on which the exercise of discretion is based. *State v. Huddleston*, 298 Kan. 941, 960, 318 P.3d 140 (2014). But "[w]hen the adequacy of the *legal* basis of a district judge's decision on admission or exclusion of evidence is questioned, we review the decision de novo." *State v. Gunby*, 282 Kan. 39, 47-48, 144 P.3d 647 (2006).

*Analysis*

Smith begins his argument by contending "evidence of prior bad acts cannot be admitted just to show that a defendant has a propensity to commit crimes, but rather, the prior bad acts must be probative of some other material fact at issue." We are compelled to point out that in sex crime cases K.S.A. 2009 Supp. 60-455(d) permits admission of evidence of a defendant's prior sexual misconduct for any relevant and probative matter, including proving the defendant's propensity to engage in the charged conduct. See *State v. Bowen*, 299 Kan. 339, Syl. ¶ 7, 323 P.3d 853 (2014); *State v. Remmert*, 298 Kan. 621, 627-28, 316 P.3d 154 (2014) (citing *State v. Prine*, 297 Kan. 460, Syl. ¶ 3, 303 P.3d 662 [2013] [*Prine II*]); *State v. Spear*, 297 Kan. 780, 789, 304 P.3d 1246 (2013); *Prine II*, 297 Kan. at 476. Nonetheless, because the trial court admitted the evidence for the specific purpose of proving Smith's intent, we begin by analyzing its ruling on that basis. See *Prine II*, 297 Kan. at 479-80 (concluding district court erred in admitting prior sex crime evidence to prove intent, absence of mistake or accident, or plan).

The evidence was relevant. Each crime charged required the State to prove Smith acted with the specific intent to arouse or satisfy his own, H.D.'s, or M.M.'s sexual desires. The charges were based upon his lewd touching of H.D. and M.M. during the photography session and his directions during the photography session that they lewdly touch each other.

Smith offered an innocent explanation for his conduct during the photography session. Accordingly, Smith's intent was a disputed, material fact at issue in the trial. See *State v. Boggs*, 287 Kan. 298, 314, 197 P.3d 441 (2008) (intent underlying act critical to determining its character when act susceptible to both an innocent interpretation and a criminal one; defendant's proffer of innocent explanation puts intent in dispute). But *cf. State v. Prine*, 287 Kan. 713, 727, 200 P.3d 1 (2009) (*Prine I*) (intent not a disputed fact in child molestation case when charged acts were criminal in themselves; if crimes occurred as victim described them, criminal intent would be indisputable). The prior convictions for sex crimes involving a child had a tendency in reason to prove Smith committed the acts here with the specific intent to arouse or satisfy his own, H.D.'s, or M.M.'s sexual desires. That Smith sexually abused a child "in the past, given today's jurors' common understanding of the psychology of those who commit such crimes, actually 'shed[s] some light' on the existence of intent in this case." *Prine I*, 287 Kan. at 726.

Smith also argues the remoteness of the 15-year-old convictions render them more unduly prejudicial than probative. But the remoteness of a prior conviction generally affects the evidence's weight rather than its admissibility. *State v. Cross*, 216 Kan. 511, Syl. ¶ 7, 532 P.2d 1357 (1975). This court has stated plainly that "[r]emoteness in time, standing alone, is insufficient to establish reversible error in the admission of a prior conviction." *State v. Carter*, 220 Kan. 16, 20-21, 551 P.2d 821 (1976); see also *State v. Breazeale*, 238 Kan. 714, 723, 714 P.2d 1356 (remoteness of 10-year-old convictions affected weight of prior crimes evidence rather than its admissibility), *cert. denied* 479 U.S. 846 (1986).

We hold the trial court did not abuse its discretion in finding the scales tipped in favor of the probative value of this prior crimes

evidence. We decline to find error in admitting the evidence to prove Smith's intent. Accordingly, we need not address Smith's claim that it was error to admit the evidence to prove motive because error in that regard, if any, would have been harmless given its admissibility to prove intent. See *Prine II*, 297 Kan. at 480-81 (error admitting prior sex crime evidence to prove intent harmless when evidence would have been admissible for another purpose—demonstrating propensity under K.S.A. 2009 Supp. 60-455[d]).

ADMISSIBILITY OF PORNOGRAPHIC PHOTOGRAPHS

While searching Smith's house, the officers discovered DVDs and magazines in a closet. The officers photographed the covers of the magazines and DVDs, and the State presented those photographs at trial. Smith argues the photographs of the covers should have been excluded.

*Standard of Review*

As noted above, we review the district court's decision to admit evidence in two steps: (1) review of whether the evidence was relevant, assessing materiality de novo and probativity under an abuse of discretion standard; and (2) review of the application of the statutory rules governing admission or exclusion of evidence. See *Phillips*, 295 Kan. at 947. Because it is essential to resolving the claim here, we reiterate that a trial court may exclude relevant evidence upon finding its probative value is outweighed by its potential for producing undue prejudice. See K.S.A. 60-445; *State v. Leitner*, 272 Kan. 398, 415, 34 P.3d 42 (2001). That determination is reviewed for an abuse of discretion. See *Phillips*, 295 Kan. at 947; *Wilson*, 295 Kan. at 621.

*Admissibility Analysis*

Before trial, Smith filed a motion in limine to exclude the police photographs of pornographic material found in the residential search, arguing their probative value was outweighed by their prejudicial effect. At a hearing on the motion, Smith noted law enforcement officers found the actual material out of plain sight in a bedroom closet; the material had not been shown to the girls or discussed with them; there was no evidence the girls had seen the

material; and the girls' bikini-clad poses in Smith's photographs did not replicate or appear to be patterned after poses depicted on the magazine covers. Smith argued the photographs were irrelevant to the charges against him and would be extremely prejudicial because the jury might be so offended that it would convict him of the charged crimes just to punish him for possessing pornography.

The State responded that the pornography was relevant because the State had "to prove why these pictures [of H.D. and M.M.] were taken." Specifically, the prosecutor said she would be trying to convince the jury that the pictures "were taken by Mr. Smith for the intent to arouse his sexual desires, or the child's sexual desires." The prosecutor then pointed out that "in the course of the investigation Mr. Smith claimed he was gay" and that "he/she's or women with penises, is what aroused him." Therefore, the prosecutor argued the jury should know what sexual material Smith had in his home to decide whether "those photographs [of the girls] were taken to appeal to his sexual desires." The prosecutor argued that if the situation were reversed and the pornography uncovered in Smith's house had all been "homosexual magazines," Smith would be arguing the gay pornography proved he had no heterosexual desire for the girls.

The district court agreed the State needed "to show this intent to arouse" and, upon the showing at the limine hearing, found the evidence's probative value outweighed its potential prejudicial effect. But the court cautioned that the evidence might develop differently at trial, which might prompt a different ruling at that time.

Smith renewed his objection at trial, stating:

"[T]here's comments that the Detective's [sic] made in his report about that the individuals were—they're illegal or they're underage or they're minors, or makin' any type of conclusion of the photographs, because there's several of 'em on the covers of the magazines or the DVD's that simply appear to be younger women with small breasts. I mean, unless he was present when those photographs were taken, he can't make a determination whether they're underage or whether the items are illegal or not."

In response, the State argued the photos were relevant to show intent because Smith repeatedly claimed he was gay and did not

like girls. The district court again ruled the evidence was admissible, while granting defense counsel a standing objection.

The fallacy in the relevancy argument as framed by the State derives from the prosecutor's fundamental misstatement about what the State had to prove to the jury under what it characterizes in its brief as the unique circumstances of this case. The prosecutor's declaration that the State had "to prove why these pictures were taken" certainly advanced the State's argument on the pornography's relevance, but it did not comport with the manner in which the State was alleging Smith committed the offenses with which he was charged.

The charging document set forth two ways by which Smith allegedly took aggravated indecent liberties with the girls, both of which involved fondling or touching. The prosecution theory on two counts was that when Smith arranged the girls' poses, he touched them in a lewd manner with the intent to sexually arouse himself or the girls. The intent to arouse related to Smith's purpose in touching the girls. The second prosecution theory, applicable to the two counts of indecent liberties, was that when Smith told the girls to strike provocative poses, he solicited the girls to fondle or touch each other in a lewd manner with the intent to sexually arouse himself or the girls. Again, the intent to arouse related to Smith's purpose in directing the girls to touch each other.

Consequently, the act of photographing the girls was not the *actus reus* of any of the charged offenses. Rather, all charges emanated from the acts of arranging the poses. Likewise, the *mens rea* of the charged offenses required the specific intent to arouse or satisfy sexual desires be related to the alleged acts of fondling, touching, or soliciting fondling or touching. Therefore, contrary to the prosecutor's argument for admitting the pornography, the State did not have to prove the reason Smith took the photographs was to arouse or satisfy his and/or the girls' sexual desires. Indeed, Smith could have committed the charged crimes without having any film in his camera. In short, Smith's motive or purpose for taking photographs was immaterial.

Accordingly, even if Smith's possession of pornography depicting young, underdeveloped women had some tendency in reason to

prove Smith's motive for taking the photographs, that fact was not material and, therefore, not relevant. In addition, the State mischaracterizes the pornography evidence as being nongraphic and similar to the pictures taken by Smith. This is not simply true. Some of the pornographic material admitted into evidence shows genital penetration, while the photos taken of H.D. and M.M. do not. Also, the pornography evidence includes magazine cover pages with the provocative written titles of the articles inside.

In sum, the disputed material facts were: (1) whether Smith touched the girls in a lewd manner with the intent to arouse or satisfy his or the girl's sexual desires; and (2) whether Smith solicited the girls to touch each other in a lewd manner with the intent to arouse or satisfy his or the girl's sexual desires. The State failed to connect the relevancy dots between Smith's possession of the pornography admitted into evidence and the allegations it was seeking to prove.

Likewise, the State's alternate rationale for admitting the pornography—refuting Smith's declaration that he is gay and did not like girls—is not compelling. Recently, in *Boleyn*, 297 Kan. at 621-27, we addressed whether the trial court erred in admitting homosexual pornography found in the defendant's home for the purpose of impeaching defendant's declaration that he was not gay. We first noted that "evidence of homosexuality is generally irrelevant and, thus, inadmissible at a trial involving the sexual molestation of a child." 297 Kan. at 624.

" 'It is no more reasonable to assume that a preference for same gender adult sexual partners establishes a proclivity for sexual gratification with same gender children than it is to assume that preference for opposite gender adult sexual partners establishes a proclivity for sexual gratification with opposite gender children.' *State v. Blomquist*, 39 Kan. App. 2d 101, Syl. ¶ 2, 178 P.3d 42 (2008)." 297 Kan. at 624.

We then discussed that an exception to that general proposition can exist when the State is offering evidence of the defendant's alleged homosexuality to show the defendant lied under oath when the defendant testified he or she was not gay. 297 Kan. at 624. "But we [held] that evidence [the defendant] merely [possessed] homosexual pornography would not be probative to rebutting or im-

peaching [the defendant's] claim of not being gay." 297 Kan. at 626. We found the defendant's possession of homosexual pornography to be particularly irrelevant in *Boleyn* because the defendant also possessed heterosexual pornography. More fundamentally, we cautioned against inferring too much about a person's actual sexual practices from the pornography he or she possesses, quoting Weinberg, Williams, Kleiner & Irizarry, *Pornography, Normalization, and Empowerment*, 39 Arch. of Sex. Behav. 1389, 1391 (2012):

" 'We believe it is unassailable that the central function of pornography is the creation or enhancement of sexual fantasy and/or arousal. That is, it presents bodies, behaviors, and situations in a way that is intended to sexually inspire or excite the viewer, *regardless of whether such bodies, behaviors, and situations would be available or even desirable for the viewer to experience in real life.*' " (Emphasis added.) *Boleyn*, 297 Kan. at 627.

In short, *Boleyn* held that homosexual pornography discovered in the defendant's home along with heterosexual pornography was irrelevant and, thus, inadmissible to prove the defendant lied about being heterosexual, *i.e.*, about not being gay. 297 Kan. at 626-27. In Smith's case, the State seeks a different result for essentially the same proposition—that heterosexual pornography found in Smith's home was relevant to prove Smith lied about being gay, *i.e.*, about not being heterosexual.

The State's argument is logically inconsistent with our holding in *Boleyn*. If possession of homosexual pornography is not relevant to prove a person's sexual practices, then possession of heterosexual pornography is likewise not relevant for that purpose. The district court erred in permitting the admission of the pornographic photographs.

*Harmless Error Analysis*

Having held it was error to admit the evidence, we must determine next whether the error was harmless under the statutory, nonconstitutional harmless error rule set out in K.S.A. 60-261. See 297 Kan. at 627. Under K.S.A. 60-261, this inquiry "requires us to determine whether there is a reasonable probability that the error affected the outcome of the trial in light of the entire record." 297 Kan. at 627. The burden of demonstrating harmlessness under

K.S.A. 60-261 is on the party benefiting from the error. *State v. McCullough*, 293 Kan. 970, Syl. ¶ 9, 270 P.3d 1142 (2012).

Notably, the State did little to single out the photographs of the magazine and DVD covers during its case. The prosecutor mentioned the magazines were found in Smith's home but were not seen by the victims. The prosecutor said only, "You can look at the covers and compare them to the photographs taken of the girls. You decide." Later, the prosecutor referenced the photographs again and said, "He claimed he was gay, but he had pornographic magazines in his house with titles like 'Pop my Cherry.' "

The only disputed issue in this case was whether the acts were done for the purpose of arousing or satisfying Smith's sexual desires. The evidence in that regard was substantial. It included evidence of Smith's prior sexual advances towards H.D.: her testimony Smith told her he loved her and was attracted to young girls; a detective's testimony H.D. told him Smith said he "would not make her do anything against her will"; evidence Smith purchased thong underwear and a vibrator for H.D.; and H.D.'s brother testifying that Smith "started to get a little bit too friendly" with H.D. and he was "always kind of flirty after a while."

It also included the bulk of the evidence, which centered on what occurred while Smith was taking the photographs. We start with the content of the Polaroids themselves, which are strong evidence of Smith's intent when touching or having the girls touch each other during the picture taking session. And the pictures are of H.D. and M.M. in bikini-style swimsuits, with the girls striking increasingly sexually provocative poses as the session progressed. The jury also watched M.M.'s interview with police in which she described how Smith positioned the girls and encouraged them to "simulate" kissing by touching their lips and tongues together. M.M. also related how Smith spread their legs further apart, touched their bottoms when adjusting their swimsuits, and tap H.D.'s bottom before going back and taking the picture.

Even more damaging was M.M.'s testimony regarding one pose in which Smith positioned the girls on their hands and knees, with their legs spread apart towards the camera, and after adjusting their bikini bottoms for this pose, Smith went back to the camera and

said, "[Y]eah, [H.D.] knows I like young girls." Similarly, H.D. testified that Smith adjusted their swimsuits "[a]round the crotch area" and said she believed Smith was sexually aroused when taking the pictures because of the way he had the girls pose. Additional evidence included both H.D. and M.M. testifying that Smith told them not to tell anyone about the photographs, and M.M. testifying how Smith offered to pay them $200 to take topless pictures next time.

In addition, the jury heard and saw evidence of Smith's prior crimes—four 1993 convictions that occurred in one case consisting of two aggravated indecent liberties with a child convictions, one aggravated criminal sodomy conviction, and one rape conviction. Two of these—the aggravated indecent liberties with a child convictions—were for the same or similar crimes with which Smith was charged in this case (aggravated indecent liberties with a child and indecent liberties with a child). And this evidence had to have negatively impacted Smith's credibility, which was at issue because he claimed his actions during the photography session were innocent.

Taken together, the jury had more than enough evidence to find that Smith intended to arouse or satisfy his own, H.D.'s, or M.M.'s (or some combination of the three) sexual desires while touching H.D. and M.M. and directing them to touch each other during the photo session. In light of the entire trial record, we conclude there is no reasonable probability the photographs of the pornographic magazine and DVD covers affected the trial's outcome. See *State v. Ward*, 292 Kan. 541, 569-70, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012).

We hold the error in admitting photographs of the magazine and DVD covers was harmless.

## REASONABLE DOUBT INSTRUCTION

At trial, the jury was given the following reasonable doubt instruction:

"The State has the burden to prove the defendant guilty. The defendant is not required to prove he is not guilty. You must presume that the defendant is not guilty *until* you are convinced from the evidence that he is guilty.

"The test you must use in determining whether the defendant is guilty or not guilty is this:

"If you have a reasonable doubt as to the truth of *any* of the claims required to be proved by the State, you must find the defendant not guilty; or

"If you have no reasonable doubt as to the truth of *any* of the claims required to be proved by the State, you should find the defendant guilty." (Emphasis added.)

Smith claims two errors within this instruction require reversal. He argues the use of the word "until" in the first paragraph was error, and he argues the last two paragraphs erroneously employed the word "any." As summarized below, this court previously declined to hold either of the claimed defects amounted to reversible error, and we follow that precedent again in this case.

*Standard of Review*

"For jury instruction issues, the progression of analysis and corresponding standards of review on appeal are: (1) First, the appellate court should consider the reviewability of the issue from both jurisdiction and preservation viewpoints, exercising an unlimited standard of review; (2) next, the court should use an unlimited review to determine whether the instruction was legally appropriate; (3) then, the court should determine whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction; and (4) finally, if the district court erred, the appellate court must determine whether the error was harmless, utilizing the test and degree of certainty set forth in *State v. Ward*, 292 Kan. 541, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012)." *State v. Plummer*, 295 Kan. 156, Syl. ¶ 1, 283 P.3d 202 (2012).

With regard to the first step, reviewability, Smith did not object to the jury instruction on either ground. But if after the first step, an appellate court determines the issue has not been properly preserved, relief may still be granted if the giving or failure to give an instruction was clearly erroneous. K.S.A. 22-3414(3).

"To determine whether an instruction or a failure to give an instruction was clearly erroneous, the reviewing court must first determine whether there was any error at all. To make that determination, the appellate court must consider whether the subject instruction was legally and factually appropriate, employing an unlimited review of the entire record."

"If the reviewing court determines that the district court erred in giving or failing to give a challenged instruction, then the clearly erroneous analysis moves to a reversibility inquiry, wherein the court assesses whether it is firmly convinced

that the jury would have reached a different verdict had the instruction error not occurred. The party claiming a clearly erroneous instruction maintains the burden to establish the degree of prejudice necessary for reversal." *State v. Williams*, 295 Kan. 506, Syl. ¶¶ 4-5, 286 P.3d 195 (2012).

## A. *Use of the word "until" does not create reversible error*

Smith claims the following language in the reasonable doubt instruction is erroneous: "You must presume that the defendant is not guilty *until* you are convinced from the evidence that he is guilty."

This same instructional language was issued in *State v. Wilkerson*, 278 Kan. 147, 158, 91 P.3d 1181 (2004). In that case, Wilkerson objected to the instruction at trial. On appeal, the court held the instruction " 'would have been improved by the substitution of the word 'unless' for the word 'until.' " 278 Kan. at 158. But the court also held the error did not require reversal because "[t]he whole of the instructions given in this case, when read together, accurately stated the law. The jury could not reasonably have been misled by them, and thus the instructions did not constitute reversible error . . . ." 278 Kan. at 158. This court has continued to adhere to that rule. See *State v. Cofield*, 288 Kan. 367, 377-78, 203 P.3d 1261 (2009); *State v. Anderson*, 287 Kan. 325, 342-43, 197 P.3d 409 (2008); *State v. Davis*, 284 Kan. 728, 739, 163 P.3d 1224 (2007) (finding no clear error in this "oft-made, always rejected" issue).

Smith does not argue the instructions as a whole did not accurately state the law, and he raises no new arguments as to why the error is clearly erroneous. He appears to urge the court to find clear error as punishment for trial courts' repeated use of the instruction despite the caselaw to the contrary. This is not the standard for clear error and does not serve as a basis for reversal. Smith presents no compelling reason to depart from this court's precedent. The use of the word "until" was not clear error.

## B. *The "any" and "any" language is not erroneous*

Smith also takes issue with the following language in the reasonable doubt instruction:

"The test you must use in determining whether the defendant is guilty or not guilty is this:

"If you have a reasonable doubt as to the truth of *any* of the claims required to be proved by the State, you must find the defendant not guilty; or

"If you have no reasonable doubt as to the truth of *any* of the claims required to be proved by the State, you should find the defendant guilty." (Emphasis added.)

The same "any" and "any" language was challenged in *State v. Herbel*, 296 Kan. 1101, 1120, 1124, 299 P.3d 292 (2013), which held the instruction was legally appropriate, although not preferred. See *State v. Smyser*, 297 Kan. 199, Syl. ¶ 7, 299 P.3d 309 (2013) (same).

Smith argues that this language is error by analogy to another reasonable doubt instruction. In *Miller v. State*, 298 Kan. 921, 923-930, 318 P.3d 155 (2014), this court held a district court errs by instructing the jury:

"If you have a reasonable doubt as to the truth of *each* of the claims required to be proved by the State, you must find the defendant not guilty. If you have no reasonable doubt as to the truth of *any* of the claims required to be proved by the State, you should find the defendant guilty." (Emphasis added.)

This court held the use of the word "each" in the first sentence of this reasonable doubt instruction effectively told the jury it may acquit the defendant only if it had a reasonable doubt as to all of the elements the State was required to prove—rather than acquitting if it had a reasonable doubt as to any single element. 298 Kan. 921, Syl. ¶ 6. To support his claim that the instruction was clearly erroneous, Smith relies on language in the Court of Appeals' decision in *Miller v. State*, No. 103,915, 2012 WL 401601 (Kan. App. 2012) (unpublished opinion), *aff'd* 298 Kan. 921, 318 P.3d 155 (2014), that was critical of the "any" and "any" reasonable doubt instruction.

But this argument was raised and rejected in *Herbel* and *Smyser*. In both cases, we held that using the words "each" and "any" in the incorrect order in a reasonable doubt instruction was sufficiently different than the "any" and "any" instruction to preclude an analytical comparison. *Smyser*, 297 Kan. at 205-06; *Herbel*, 296 Kan. at 1122. Consistent with *Herbel* and *Smyser*, we hold the

reasonable doubt instruction issued at Smith's trial was legally appropriate and not clearly erroneous.

## CRIMINAL HISTORY SCORE

Smith argues his 272-month sentence imposed for Count III, indecent liberties with a child, is illegal because a prior conviction that had already been considered was used to enhance his criminal history score, in violation of K.S.A. 21-4710(d)(11). He seeks remand for resentencing. The State concedes the error but disagrees that remand is the appropriate remedy. The State argues the error is harmless because the sentence runs concurrent to the 80-year-to-life aggregate sentence imposed for his aggravated indecent liberties with a child convictions in Counts I and II. Smith does not address the State's harmless error analysis.

### Standard of Review

" 'The question of whether a sentence is illegal is a question of law over which this court has unlimited review. An illegal sentence is a sentence imposed by a court without jurisdiction, a sentence which does not conform to the statutory provision, either in character or the term of the punishment authorized, or a sentence which is ambiguous with regard to the time and manner in which it is to be served.' [Citation omitted.]" *State v. LaBelle*, 290 Kan. 529, 532, 231 P.3d 1065 (2010).

### Error Analysis

Smith alleges his sentence violates K.S.A. 21-4710(d)(11), which states:

"Prior convictions of any crime shall not be counted in determining the criminal history category if they enhance the severity level or applicable penalties, elevate the classification from misdemeanor to felony, or are elements of the present crime of conviction. Except as otherwise provided, all other prior convictions will be considered and scored."

Some additional facts are necessary to appreciate the issue. As stated earlier, Smith had four prior sex offense convictions: two for aggravated indecent liberties with a child; one for aggravated criminal sodomy; and one for rape. Each prior conviction was classified as a person felony for criminal history purposes. In this case, Smith's two aggravated indecent liberties with a child convictions are Jessica's Law offenses under K.S.A. 21-4643(a)(1)(C). Gener-

ally, those convictions carry life sentences with mandatory minimum prison terms of not less than 25 years. K.S.A. 21-4643(a)(1).

But Smith was sentenced under K.S.A. 21-4643(b)(1) to life imprisonment with a mandatory minimum of 40 years for each aggravated indecent liberties conviction because he had previously been convicted of a crime listed in K.S.A. 21-4643(a)(1). The district court did not specify which prior convictions were used to impose the hard 40 sentences. See *LaBelle*, 290 Kan. at 538 ("[C]ourts are not required to specify at sentencing how particular convictions or adjudications are used. . . . [But] we hold that the preferred judicial practice is to put on the record the specific use for each conviction or adjudication . . . .").

The district court also ordered the hard 40 sentences to run consecutively, resulting in a mandatory minimum of 80 years' imprisonment. Smith is not contesting the district court's authority to enter the hard 40 sentences on Counts I and II. But he argues the process used to arrive at the sentences is relevant to his sentencing challenge on Count III because using two prior convictions to impose them precluded the court from using those priors again when calculating Smith's criminal history score on Count III. Smith is correct. Imposing the hard 40 sentences left only two prior convictions available for calculating the sentence for Count III.

One of Smith's remaining prior convictions was used to qualify him as a persistent sex offender, requiring the district court to double his gridblock sentences on both indecent liberties with a child convictions under K.S.A. 21-4704(j). Using that prior conviction to classify Smith as a persistent sex offender precluded using it to calculate Smith's criminal history score. See *State v. Moore*, 274 Kan. 639, 651, 55 P.3d 903 (2002) (district court erred in failing to remove prior conviction from criminal history after using it to classify defendant as a persistent sex offender). So Smith had only one prior adult person felony conviction available for use in calculating his criminal history score when sentencing him for the indecent liberties with a child conviction in Count III.

But Smith received an "A" criminal history classification, meaning Smith's criminal history included three or more adult convictions for person felonies. See K.S.A. 21-4709. This resulted in the

272-month sentence Smith now challenges. The State concedes that this was error, and we agree.

The only remaining question is the appropriate remedy, if any. The State argues the error was harmless because Smith's sentence on Count III runs concurrent to his 80-year minimum aggregate life sentence for the aggravated indecent liberties with a child convictions. In other words, as a practical matter, Smith will be serving those sentences long after he completes the concurrent sentence for indecent liberties with a child imposed under Count III.

*Prejudice Analysis*

The State argues remand is not required based on *State v. Riley*, 259 Kan. 774, 778, 915 P.2d 774 (1996). There, the defendant was convicted of three offenses and the sentences were ordered to run concurrently. The court held that the district court properly calculated the defendant's sentence for the primary crime, which in that case was the conviction for which the longest sentence was imposed. But it improperly computed the sentences for the other two crimes, so the court concluded remand for resentencing was unnecessary because the defendant was not prejudiced by the error. 259 Kan. at 780.

The prejudice requirement announced in *Riley* that precluded remand has been followed in multiple conviction cases for erroneous nonbase sentences that run concurrent to controlling base sentences for primary offenses. See, *e.g.*, *State v. Bolin*, 266 Kan. 18, 25, 968 P.2d 1104 (1998) (declining to remand defendant's multiple conviction cases for resentencing when sentences for nonbase crimes were erroneous but sentences for primary crimes were both controlling and correctly calculated). But these cases do not specifically address whether a defendant is required to show prejudice by specifically addressing whether an illegal sentence claim is subject to a harmless error analysis.

"An 'illegal sentence' is: (1) a sentence imposed by a court without jurisdiction; (2) a sentence that does not conform to the applicable statutory provision, either in character or the term of authorized punishment; or (3) a sentence that is ambiguous with respect to the time and manner in which it is to be served." *State*

*v. Taylor,* 299 Kan. 5, 8, 319 P.3d 1256 (2014). This court has held that a violation of K.S.A. 21-4710(d)(11) renders a sentence illegal. See *LaBelle,* 290 Kan. at 534. Illegal sentences, or sentences imposed without the trial court's jurisdiction, are void. See *State v. McCarley,* 287 Kan. 167, 175, 195 P.3d 230 (2008). Finally, appellate courts have a clear duty to set aside void sentences and impose valid ones. See *Chambers v. State,* 199 Kan. 483, 485, 430 P.2d 241 (1967).

We hold that remand for resentencing on Count III is required even though it will not affect the time Smith ultimately serves.

## NO-CONTACT ORDER

At sentencing, the trial court ordered that Smith not have contact with the victims or the victims' families. On appeal, Smith argues the trial court lacked authority to impose a no-contact order, and the State concedes it was improper. We agree. See *State v. Bowen,* 299 Kan. 339, 359, 323 P.3d 853 (2014); *State v. Plotner,* 290 Kan. 774, 781, 235 P.3d 417 (2010); *State v. Post,* 279 Kan. 664, 665-69, 112 P.3d 116 (2005). In those cases, the appropriate remedy was to vacate the no-contact order but leave the remainder of the sentence intact. See *Bowen,* 323 P.3d at 867. Because the no-contact order was illegal, we must vacate that portion of Smith's sentence.

## LIFETIME ELECTRONIC MONITORING SENTENCE

It is unclear from the sentencing hearing transcript whether the trial court ordered lifetime electronic monitoring at that hearing. It appears the issue was raised by the State, but the transcript recites that the trial court's response was inaudible. The parties agree that lifetime electronic monitoring was ordered at sentencing; so we accept their joint representations.

The State correctly concedes that lifetime electronic monitoring was improper under *State v. Jolly,* 291 Kan. 842, 848, 249 P.3d 421 (2011). In *Jolly,* this court held K.S.A. 22-3717(u) "plainly states that the parole board shall order electronic monitoring as a condition of parole." 291 Kan. at 848. We likewise hold it was

improper for the trial court to sentence Smith to lifetime electronic monitoring, and we vacate that portion of his sentence.

### LIFETIME POSTRELEASE SUPERVISION SENTENCE

In his last sentencing challenge, Smith argues the district court erred by sentencing him to lifetime postrelease supervision instead of parole. The sentencing transcript simply states the court "will order a post-release provision of life" without discussing to which counts the postrelease order was attached. And the sentencing journal entry lists lifetime postrelease supervision for all four crimes of conviction. This is pertinent because only two of those sentences—the aggravated indecent liberties convictions in Counts I and II—carried indeterminate life sentences. The two convictions for indecent liberties with a child in Counts III and IV are grid offenses. The State concedes the district court erred by imposing lifetime postrelease supervision without distinguishing between the aggravated indecent liberties with a child and indecent liberties with a child sentences.

Both parties are correct that lifetime postrelease supervision cannot be imposed in conjunction with an indeterminate life sentence. In *State v. Harsh*, 293 Kan. 585, 265 P.3d 1161 (2011), this court held that there is a distinction between lifetime parole and lifetime postrelease supervision. And an inmate sentenced to life imprisonment for crimes occurring after July 1, 2006, under Jessica's Law, K.S.A. 21-4643, is parole eligible after serving the mandatory minimum sentence. 293 Kan. at 589-90 (citing K.S.A. 2006 Supp. 22-3717[b][5] and [u]). For Counts I and II, Smith was similarly sentenced to life imprisonment for two Jessica's Law offenses. The district court erred by imposing lifetime postrelease supervision for these counts, and we vacate that portion of Smith's sentence.

As we held in *Harsh*, parole is separate and distinct from the sentence and will be granted, if at all, by the Kansas Prisoner Review Board (successor to the Kansas Parole Board). The proper remedy is simply to vacate the lifetime postrelease supervision imposed on Counts I and II. See 293 Kan. at 590.

* * *

JOHNSON, J., dissenting: I disagree with the majority's conclusion that "there is no reasonable probability the photographs of the pornographic magazine and DVD covers affected the trial's outcome." In assessing whether the State has met its burden of proving harmless error, we must evaluate the error "in light of the entire record." *State v. Ward*, 292 Kan. 541, 569, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012).

Here, the entire record before us reveals that the State used the erroneously admitted evidence to entice the jury to convict Smith based upon facts that were not relevant to the stated elements of the charged crimes. Without the distraction of deciding Smith's motive and intent in taking the photographs or considering the pornographic nature of the images depicted in the photographs, one or more rational jurors could reasonably have decided that Smith touched the girls and directed the girls to touch each other for the purpose of setting the scene to be photographed. That would not have constituted the lewd touching with intent to arouse or satisfy sexual desires required by the charging document, even if we all believe that Smith intended to subsequently use the resulting photographs as pornography for his sexual arousal or satisfaction. That distinct probability belies harmless error; just one not guilty vote would have affected the trial's outcome.

The majority acknowledges that the State misunderstood what it had to prove to the jury. Indeed, it recites examples of the prosecutor's legally incorrect and potentially confusing arguments to the jury, *e.g.*, that the jury could decide the case by comparing the girls' photographs to the pornography photographs or by deciding that Smith was not gay. Of course, Smith's being aroused by looking at the provocative photographs or even his being aroused by looking at the underage girls as they posed according to his directions did not make him guilty of lewd touching with an intent to arouse. It is unfathomable to me that an appellate court would affirm a conviction for lewd touching, which resulted in an 80-year prison sentence, when the State prosecuted the defendant on the basis

that his prurient motive for photographing underage girls in bathing suits established his guilt.

It is likewise curious to me that the majority fails to hold the State accountable for continuing its meritless arguments on appeal. For instance, in the section of its initial appellate brief arguing that Smith's prior convictions were relevant to this prosecution, the State asserts that Smith's "motive in taking the pictures was an issue"; that "[t]he relevant question [was] why did he take the pictures"; and, finally, that "[b]ecause the State must prove that [Smith] took the photographs with the 'intent to arouse,' evidence as to the reason why [Smith] took the photographs is material, relevant, and probative." Then, in arguing the relevance of the pornography photographs, the State again ignores that the gravamen of the charged offenses is lewd touching, not photography or even lusting after young girls. There, the State declares that "because the [S]tate must prove that the photos of the victims were taken with the intent to arouse the sexual desires, Mr. Smith's sexual desires come into play." Additionally, the State claimed that "the pornographic photos [were] admitted for the purpose of countering the statement that [Smith] was gay and didn't like girls."

This court has declared that a party is not permitted to change its theory on appeal. See *Burcham v. Unison Bancorp, Inc.*, 276 Kan. 393, Syl. ¶ 7, 77 P.3d 130 (2003). Yet, the majority apparently finds it permissible for this court to *sua sponte* change the theory of prosecution on appeal in order to save the State's erroneously obtained convictions. There is nothing fundamentally fair about that.

Moreover, most of the evidence the majority relies upon to find harmlessness actually just supports the State's theory that Smith took the photographs to use for his sexual arousal and satisfaction, rather than being probative on the disputed issue of whether Smith only touched the girls to arrange their poses. See *State v. Boleyn*, 297 Kan. 610, Syl. ¶ 1, 303 P.3d 680 (2013) ("Evidence is probative if it has any tendency in reason to prove a fact."). For example, Smith's statement while at the camera that "yeah, [H.D.] knows I like young girls" simply explains why he was placing the girls in provocative poses and photographing them. If he wanted to im-

mediately satisfy his sexual desires through his touching, one would have expected him to do so in a less innocuous fashion. There was scant actual evidence that had any tendency in reason to prove Smith touched the girls in a *lewd manner* or that the *touching* was done with an intent to arouse or satisfy sexual desires. To get the convictions, the State had to tie the inadmissible pornography and the irrelevant arguments on sexual orientation to the immaterial act of photographing the girls in bikinis striking provocative poses. Proving that the defendant performed reprehensible acts is not the same as proving that the defendant performed the charged criminal acts.

In short, I would reverse and make the State try to convict Smith based upon acts that are actually elements of the crimes with which he is charged.

LUCKERT and BEIER, JJ., join in the foregoing dissenting opinion.