NOT DESIGNATED FOR PUBLICATION

No. 121,042

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

VICTOR MARK SIMMONS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Crawford District Court; MARY JENNIFER BRUNETTI, judge. Opinion filed July 24, 2020. Affirmed.

*Korey A. Kaul*, of Kansas Appellate Defender Office, for appellant.

*Michael Gayoso Jr.*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before SCHROEDER, P.J., HILL and GARDNER, JJ.

PER CURIAM: A jury convicted Victor Mark Simmons of possession of methamphetamine with intent to distribute and misdemeanor fleeing and eluding. On appeal, Simmons argues the State failed to show he possessed the methamphetamine found in the glove box of the car he was driving. Yet the State introduced multiple incriminating circumstances that show Simmons constructively possessed the narcotics. Simmons also contends the reasonable doubt jury instruction was clearly erroneous. But our Supreme Court has found that the language Simmons complains of does not constitute clear error. As a result, we affirm.

1

*Factual and Procedural Background*

A jury convicted Simmons of possessing methamphetamine with intent to distribute more than 100 grams, see K.S.A. 2019 Supp. 21-5705(a)(1), (d)(3)(D), and misdemeanor fleeing or eluding a police officer, see K.S.A. 2019 Supp. 8-1568(a)(1), (c)(1)(A). The district court sentenced him to 196 months in prison.

At trial, the State presented evidence that Simmons fled, first in a car and then on-foot, from a law enforcement officer conducting a traffic stop on December 2, 2016. During a search of the car, police found methamphetamine in the car's glove box. We summarize the trial testimony below.

Dustin McDaniel and Jeremy Karlinger, two drug enforcement unit detectives, saw Simmons waiting outside a residence in the driver's seat of a green Cadillac. They confirmed with dispatch that he had a suspended license. They then asked Officer Joe Noga to wait around the corner in case Simmons decided to drive away. Noga was familiar with Simmons, knew his nickname was "Dash," and knew he did not have a valid license.

Karlinger saw Anthony Logan get in the Cadillac but he did not see Logan bring anything with him. In his testimony, Logan confirmed he took nothing into the Cadillac. Logan also denied carrying narcotics or knowing narcotics were in the Cadillac. And no one touched the glove box while he was in the car.

Simmons drove away. When he passed Noga, Noga followed, activating his emergency lights to conduct a traffic stop for driving while suspended. But Simmons responded by speeding away. A chase ensued. Simmons drove through several stop signs and, at one point, sped through a 30-mph residential area going 70 mph. During the chase, Noga could not see what was happening inside the Cadillac.

2

The chase ended when Simmons pulled into an alley, jumped out of the Cadillac, and ran away through a backyard. Yet Logan stayed around. Noga stayed with Logan and the Cadillac rather than chase Simmons. Noga saw a cell phone on the ground next to the driver's door. He asked Logan if it was his, but Logan showed him another phone stating, "No. Here is mine."

Lieutenant Benjamin Hendersen arrived, and the officers towed the car. During an inventory search, Henderson found in the backseat a box for an aerial drone and a black jacket. Inside the black jacket was a prescription pill bottle for "Victor Simmons." Inside the unlocked glove box Hendersen found a black batter's glove with an item inside—a plastic bag containing 111.42 grams of methamphetamine.

Upon finding the methamphetamine, the officers stopped the inventory search, towed the vehicle, and got a search warrant. McDaniel and Karlinger again searched the Cadillac. This time they found another cell phone and, in the jacket pocket, a plastic bag with smaller baggies inside. Both testified that, based on their training and experience as drug enforcement officers, multiple cell phones and small plastic baggies were indications of drug distribution. Both also testified that the amount of methamphetamine found in the car showed an intent to distribute it.

Seven days later, the police found Simmons and arrested him. While searching him, they found a cell phone and an operating manual for a drone. The operating manual matched the drone box found in the backseat of the Cadillac. Simmons asked why the police were arresting him, and they responded it was for drug charges and running from police. Although the police had not mentioned the Cadillac, Simmons replied, "I wasn't in that car."

After the evidence was presented, the district court instructed the jury, including this jury instruction about the burden of proof: "The State has the burden to prove the

defendant is guilty. The defendant is not required to prove he is not guilty. You must presume that he is not guilty *until* you are convinced from the evidence that he is guilty." (Emphasis added.) Neither Simmons nor the State objected to this instruction at that time.

The jury found Simmons guilty of possessing methamphetamine with intent to distribute more than 100 grams and of fleeing or eluding a police officer.

Simmons timely appeals.

*Was the Evidence Sufficient to Find Simmons Guilty of Possession of Methamphetamine With the Intent to Distribute?*

Simmons first argues that the State's evidence was insufficient to show he possessed the methamphetamine. Simmons concedes that the State presented enough evidence to show that he was driving the Cadillac and that the police found methamphetamine in its glove box. Yet, relying on *State v. Rosa*, 304 Kan. 429, 434, 371 P.3d 915 (2016), he contends the State showed only that he was in the same car as the methamphetamine and failed to present other incriminating circumstances as is necessary to prove nonexclusive possession.

*Standard of Review*

When we review a defendant's challenge to the sufficiency of the evidence, we review the evidence in a light most favorable to the prosecution to determine whether a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. We do not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations. *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018). A guilty verdict can be based on only circumstantial evidence and any reasonable inferences the jury could deduce from that evidence. *Rosa*, 304 Kan. at 433.

*Analysis*

Simmons challenges only the sufficiency of the evidence regarding possession. Our Supreme Court has recently held that to convict "a defendant of possession with intent to distribute a controlled substance under K.S.A. 2011 Supp. 21-5705(a), the State must prove that the defendant had knowledge of the nature of the controlled substance— meaning, that the defendant either knew the identity of the substance or knew that the substance was controlled." *State v. Rizal*, 310 Kan. 199, 208, 445 P.3d 734 (2019). Yet Simmons does not argue any lack of knowledge. Rather, he argues solely that the State failed to show he constructively possessed the drugs.

K.S.A. 2019 Supp. 21-5701(q) defines *possession* as "having joint or exclusive control over an item with knowledge of and intent to have such control or knowingly keeping some item in a place where the person has some measure of access and right of control." Because Simmons and Logan both could have had access to or control of the drugs in the glovebox, this is a nonexclusive possession case. In nonexclusive possession cases, "the mere presence of or access to the drugs, standing alone, is insufficient to demonstrate possession absent other incriminating circumstance." *Rosa*, 304 Kan. at 434. Simmons focuses on this premise, arguing that the State showed only that he and Logan were near the drugs.

We thus examine whether the State showed "other incriminating circumstances" showing possession, as *Rosa* requires. These circumstances include:

- the defendant's proximity to the narcotics;
- the defendant's previous sale of narcotics;
- the defendant's previous use of narcotics;
- the police finding the narcotics in plain view;
- the defendant's ownership of the area where the police found the narcotics;

5

- the proximity of the defendant's belongings to the narcotics;
- the defendant's incriminating statements; and
- the defendant's suspicious behavior.

See *Rosa*, 304 Kan. at 434 (citing *State v. Boggs*, 287 Kan. 298, 317, 197 P.3d 441 [2008]; *State v. Bockert*, 257 Kan. 488, 494, 893 P.2d 832 [1995]; *State v. Beaver*, 41 Kan. App. 2d 124, 129, 200 P.3d 490 [2009]).

Viewed in the light most favorable to the State, the record includes several incriminating circumstances showing Simmons constructively possessed the methamphetamine. First, Simmons, sitting in the driver's seat, was within arm's reach of the glove box. He was close to the drugs.

Second, the State presented circumstantial evidence that Simmons may have been engaged in the sale or distribution of narcotics. Police found a black jacket with a pill bottle inside with Simmons' name on it. Inside that jacket was a plastic bag with smaller plastic baggies inside. Both McDaniel and Karlinger testified that based on their training and experience the collection of the smaller baggies indicates the sale of narcotics. See *United States v. Arvizu*, 534 U.S. 266, 273, 122 S. Ct. 744, 151 L. Ed. 2d 740 (2002) (in the reasonable suspicion context, allowing "officers to draw on their own experiences and specialized training to make inferences from and deductions about the cumulative information available"); *State v. Johnson*, No. 111,215, 2015 WL 4366448, at *4 (Kan. App. 2015) (unpublished opinion) (including, as an incriminating circumstance, the presence of rolling papers, commonly used to roll marijuana blunts, found in the defendant's pants). And police found multiple cell phones in or near the car. Daniel and Karlinger also testified that the presence of multiple cell phones indicates the sale of narcotics.

Third, the State introduced evidence of Simmons' suspicious behavior. Simmons led officers on a high-speed chase through a residential neighborhood and eventually fled on foot. See *State v. Griffin*, 279 Kan. 634, 647, 112 P.3d 862 (2005) ("'Evidence of flight may be admissible to establish the consciousness of guilt, the commission of the acts charged, and the intent and purpose for which those acts were committed.'"); *State v. Westmoreland*, No. 117,833, 2018 WL 3198410, at *4 (Kan. App. 2018) (unpublished opinion); *State v. Miller*, No. 116,482, 2017 WL 4560968, at *3 (Kan. App. 2017) (unpublished opinion) (including the defendant's flight as an incriminating circumstance of possession of narcotics).

Viewing the evidence in the light most favorable to the State, we find that a rational jury could have found Simmons guilty beyond a reasonable doubt of possession of methamphetamine with intent to distribute.

*Did the District Court Clearly Err in Instructing the Jury?*

Next, Simmons argues the reasonable doubt jury instruction was legally inappropriate because it misled the "jury into believing that they should expect to be convinced of the defendant's guilt" by using the word *until*, instead of *unless*. Simmons asserts this error was clearly erroneous.

*Preservation and Standard of Review*

When a defendant alleges that a jury instruction is erroneous, we apply a multi-step process. First, we consider the reviewability of the issue from both jurisdiction and preservation viewpoints, exercising an unlimited standard of review. Next, we use an unlimited review to determine whether the instruction was legally appropriate. Then, we determine whether sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, supported the instruction. *State v. Butler*, 307 Kan.

831, 845, 416 P.3d 116 (2018). And finally, if the district court erred, we conduct a reversibility inquiry. The standard for that inquiry depends on whether the defendant objected to the instruction during the trial. *State v. Williams*, 308 Kan. 1439, 1451, 430 P.3d 448 (2018).

Simmons did not object to this instruction during trial. So the district court's failure to give a legally and factually appropriate instruction is reversible only if that failure was clearly erroneous. See K.S.A. 2019 Supp. 22-3414(3); *Butler*, 307 Kan. at 845. To establish clear error, "'the defendant must firmly convince the appellate court that the giving of the instruction would have made a difference in the verdict.'" *State v. Cooper*, 303 Kan. 764, 771, 366 P.3d 232 (2016). In determining clear error, we review the effect of the erroneous instruction in light of the entire record, including the other instructions, counsel's arguments, and whether the evidence is overwhelming. *In re Care and Treatment of Thomas*, 301 Kan. 841, 849, 348 P.3d 576 (2015).

*Analysis*

Simmons objects on appeal to this reasonable doubt instruction:

"The State has the burden to prove the defendant is guilty. The defendant is not required to prove he is not guilty. You must presume that he is not guilty *until* you are convinced from the evidence that he is guilty.

"The test you must use in determining whether the defendant is guilty or not guilty is this: If you have a reasonable doubt as to the truth of any of the claims required to be proved by the State, you must find the defendant not guilty. If you have no reasonable doubt as to the truth of any of the claims required to be proved by the State, you should find the defendant guilty." (Emphasis added.)

Our Supreme Court has addressed this issue many times, consistently finding no clear error. See, e.g., *State v. Smith*, 299 Kan. 962, 980, 327 P.3d 441 (2014); *State v. Cofield*, 288 Kan. 367, 378, 203 P.3d 1261 (2009); *State v. Gallegos*, 286 Kan. 869, 876-78, 190 P.3d 226 (2008). Simmons is correct that the language used here is not preferable—the instruction would have been improved by using the word "unless" instead of the word "until." *Smith*, 299 Kan. at 980. But our Supreme Court has consistently held that this error does not constitute clear error where the whole of the instructions given in the case, when read together, accurately stated the law and could not reasonably have misled the jury. See, e.g., *Smith*, 299 Kan. at 980; *Gallegos*, 286 Kan. at 877; *State v. Wilkerson*, 278 Kan. 147, 158, 91 P.3d 1181 (2004).

Here, as in *Smith*, the whole of the instructions in this case, read together, accurately stated the law and the jury could not reasonably have been misled by them. Simmons raises no new arguments as to why this error is clearly erroneous. The Kansas Court of Appeals is duty-bound to follow Kansas Supreme Court precedent unless we find some indication that the Kansas Supreme Court is departing from its previous position. *State v. Rodriguez*, 305 Kan. 1139, 1144, 390 P.3d 903 (2017). We find none here. We thus follow our Supreme Court's precedent in rejecting this "oft-made, always rejected, argument." *State v. Davis*, 284 Kan. 728, 739, 163 P.3d 1224 (2007).

Affirmed.