NOT DESIGNATED FOR PUBLICATION

No. 112,631

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

TONY PULLEY,
*Appellant*.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; MICHAEL GROSKO, judge. Opinion filed October 2, 2015. Sentence vacated and remanded with directions.

*Corrine E. Gunning*, of Kansas Appellate Defender Office, for appellant.

*Casey L. Meyer*, assistant district attorney, *Jerome A. Gorman*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before LEBEN, P.J., GREEN, J., and JEFFREY E. GOERING, District Judge, assigned.

*Per Curiam*: Tony Pulley appeals the district court's imposition of a Jessica's Law sentence of life imprisonment with no chance of parole for 25 years. Pulley sought a departure sentence, which was denied by the district court. On appeal Pulley argues that the district court failed to follow the proper statutory method when considering a departure from a Jessica's Law sentence. Because we find that the district court did not consider Pulley's motion for departure consistent with K.S.A. 21-4643(d) (now K.S.A. 2014 Supp. 21-6627[d][1]), we vacate Pulley's sentence and remand the case back to the district court for resentencing.

1

In February of 2012, a mother of three girls reported to the police that her step-father, Pulley, had sexually abused her three daughters between January 2006 and January 2009. The reports were investigated, and the State charged Pulley with one count of rape and one count of aggravated indecent liberties. The victim in both counts was J.S., Pulley's step-granddaughter.

Plea negotiations ensued, resulting in a plea agreement in which Pulley agreed to plead guilty to the aggravated indecent liberties charge in exchange for the State's dismissal of the rape charge. The transcript of the plea hearing reflects that Pulley only admitted to the bare minimum of facts sufficient to establish a factual basis for the guilty plea, and then only with prompting from his attorney:

> "THE COURT:  All right. In your own words, I need you to tell me what you did on that occasion that makes you believe you're guilty of that charge.
> "MR. PULLEY:  Well, on that—on that occasion, I was in and out of the hospital. I was on a lot of prescription drugs and, you know, alcohol. And, you know, I—I don't remember a lot of the things that I—I did, you know, at the time, you know. But I know that the mixing of alcohol and prescription drugs, you know, that, you know, I—I probably did—
> "THE COURT:  That's not good enough for this Court, Mr. Pulley, I need more—
> "MS. HAMILTON:  You have to (unintelligible)—
> "THE COURT:  —specific information.
> "MR. PULLEY:  Huh?
> "MS. HAMILTON:  You have to say that this is what you—
> "MR. PULLEY:  Yeah.
> "MS. HAMILTON:  —did, that you touched her—
> "MR. PULLEY:  Yeah. Okay.  Yeah, you know, that I, you know, I touched her, you know.
> "MS. HAMILTON:  Where? Where?
> "MR. PULLEY:  Huh? Oh. Yeah, okay. Yeah. I touched her on the butt and—
> "MS. HAMILTON:  It was a sexual manner—in a sexual manner.

2

"MR. PULLEY:  Yeah, in a sexual manner. With all this?

"MS. HAMILTON:  No.

"MR. PULLEY:  Okay.

"MS. HAMILTON:  That's enough I believe.

"THE COURT:  Was that done to arouse or satisfy your own sexual desires?

"MR. PULLEY:  Yes."

The district court then asked the prosecutor if the State had any additional information to add to the record. The prosecutor told the Court that the offenses occurred in Kansas City, Wyandotte County, Kansas. The prosecutor then provided the following:

"The victim in this case, J.S., who was under the age of 14 at the time it occurred, did give an inter- —statement to—an interview was conducted with Sunflower House in which she detailed the touching that did occur; that it did occur on or about August 1st, 2007, through May 31st of 2008; and that the defendant, her step-grandfather, did touch her in a manner—in a sexual manner that was done with the intent to arouse his sexual desire."

The district court concluded there was a factual basis for the guilty plea without asking Pulley to admit the truth of the additional information that was provided by the prosecutor.

Prior to sentencing, Pulley's counsel filed a written motion seeking a durational departure to 30 months rather than the presumptive life sentence. In the written motion, Pulley denied committing any intentional criminal act against J.S. He suggested that J.S. may have a motive for falsely accusing him of the crime, although he said he did "not want to call her a liar." Pulley also highlighted his serious physical and mental health problems as well as his wife's failing health.

The sentencing hearing was held before a different district judge than the judge who conducted the plea hearing. Defense counsel, in oral argument on the departure

3

motion, stated that Pulley's wife (who was not present) did not believe that Pulley was capable of doing the things alleged by the State and believed that the victim "had a lot of problems telling the truth and so it is not quite as clear cut picture." Defense counsel further argued that Pulley had provided guidance to the victim when her parents were not available, that the incident alleged went back significantly in time, and that Pulley and his wife had serious health problems.

When afforded the opportunity to present statements in mitigation, Pulley told the court that his step-granddaughter had made a previous false accusation of rape against another boy, and "I really feel that's basically what's happened with me with my case." Pulley stated that he was on medication and was "self-medicating" with alcohol, and had no memory of the incident but that "I know in my heart that I would never intentionally hurt any of my grandchildren."

In ruling on the departure motion, the district court first went through each of the statutory mitigation factors. The district court found that Pulley had no convictions in his criminal history. As to Pulley's age, the district court found: "I suppose you could make the argument that he's at the high end and would face dying while incarcerated." The district court found that none of the remaining statutory mitigation factors were present.

The district court next addressed the nonstatutory mitigation factors argued by Pulley and his counsel. The court found that "they basically boil down to the fact that he does have serious health issues that he would like to have an opportunity—I suppose to at some point in time get out of prison and spend some time with his wife and deal with those issues." The court found that the remaining arguments "basically talk about whether or not he's actually guilty of this offense and what he admits to and remembers doing."

The district court then discussed the nature of the case at some length. The judge acknowledged that he did not take the guilty plea but noted that Pulley had pleaded guilty

4

"and so I assume there was a factual basis either stated by the defendant himself and accepted by the Court or stated by—given by the State and agreed to by the defendant." The judge then referred to the probable cause affidavit and noted:

> "What the affidavit does do in this case is in looking at the charging document itself, it does detail a series of incidents over a period of time from August of 2007 to May of 2008, in which the defendant in this case has pled guilty to abusing his step granddaughter. And the abuse is at least related in the affidavit is not what may be called or termed incidental in nature, is not outside the clothes rubbing or touching it is actually allegations of underneath the clothes penetration and other distasteful acts."

The judge found no merit in Pulley's general denial and noted that Pulley had been on diversion for a prior sex offense.

The district court then ruled on Pulley's departure motion and sentenced him as follows:

> "In considering all of this and what's been presented, I do not believe that the defendant has demonstrated to the Court substantial and compelling reasons for me to depart from the statutorily prescribed sentence. I've considered statutory factors, I've considered nonstatutory factors, there is—that's kind of what I look to in the Supreme Court, there was a case where the defendant was able to argue that because of his age, which was 19, it would show the victim was a willing participant in the crime. He was able to show that he was at a low or moderate risk of re-offending, he was able to show lack of physical harm to the victim. The trial [c]ourt found that did not amount to substantial and compelling reasons. And [the] Supreme Court said, yeah, a reasonable person could find that. And quite frankly, Mr. Pulley, you've got a lot less on the plus side than the gentleman had in that case.
>
> "About the only thing you presented to me at all is your age and your health issues and that's not enough. Therefore, you will be sentenced to the custody of the State Secretary of Corrections for a term of life."

5

On appeal, Pulley argues that the district court committed error by improperly weighing the mitigating factors against aggravating factors. Pulley further argues that the district court committed error by considering facts in the probable cause affidavit that were not alleged by the State in support of Pulley's conviction for aggravated indecent liberties.

We begin the analysis of these issues with a review of the statutory framework within which departure requests are to be considered under Jessica's Law. The law in effect at the time Pulley was sentenced, K.S.A. 21-4643(d) states in relevant part:

> "[T]he sentencing judge shall impose the mandatory minimum term of imprisonment provided by subsection (a), unless the judge finds substantial and compelling reasons, *following a review of mitigating circumstances*, to impose a departure. If the sentencing judge departs from such mandatory minimum term of imprisonment, the judge shall state on the record at the time of sentencing the substantial and compelling reasons for the departure." (Emphasis added.)

The design of Jessica's Law is such that no balancing of aggravating and mitigating factors is involved. As explained in *State v. Spencer*, 291 Kan. 796, 809, 248 P.3d 256 (2011):

> "On structure, no balance between mitigators and aggravators such as that implied in K.S.A. 21-4716 or explicitly provided for in K.S.A. 21-4624(e) or K.S.A. 21-4635(b)-(d) is necessary when Jessica's Law is the starting point. The only way for Jessica's Law to operate is to intensify, if not lengthen, a sentence. It makes 25 years a mandatory minimum, unless certain mitigators justify a departure. Simply put, there is nowhere to go but to a less-intense place."

In *State v. Jolly*, 301 Kan. 313, 322, 342 P.3d 935 (2015), our Supreme Court stated that the plain language of the statute, "which makes no reference to 'aggravating circumstances' or aggravating factors, instructs the sentencing court to conduct a review

6

of the mitigating circumstances without balancing them against the aggravating ones."
According to *Jolly*:

> "[T]he proper statutory method when considering a departure from a Jessica's Law sentence is for the district court first to review the mitigating circumstances without any attempt to weigh them against any aggravating circumstances. Then, in considering the facts of the case, the court determines whether the mitigating circumstances rise to the level of substantial and compelling reasons to depart from the otherwise mandatory sentence. Finally, if substantial and compelling reasons are found for a departure to a sentence within the appropriate sentencing guidelines, the district court must state on the record those substantial and compelling reasons." 301 Kan. at 324.

*Jolly* acknowledged that prior decisions involving Jessica's Law discussed the weighing of aggravating and mitigating factors but made clear that any language in those cases that would indicate that weighing aggravating factors was appropriate was disapproved. 301 Kan. at 322.

Following the roadmap provided by *Jolly*, a sentencing court should engage in a two-step process to decide whether a departure sentence is appropriate under Jessica's Law: (1) determine whether any mitigating circumstances exist (without regard to the existence of aggravating circumstances), and (2) to the extent mitigating factors do exist, determine whether they give rise to substantial and compelling reasons to depart given the facts of the case. With respect to the second step, *Jolly* provides useful guidance:

> "While K.S.A. 21-4643(d) does not allow a weighing of aggravating factors against mitigating factors, the facts of the case—including any egregious ones—are essential for a judge to consider in deciding if a departure is warranted based on substantial and compelling reasons. Simply stated, a judge does not sentence in a vacuum. The sentencing judge is to consider information that reasonably might bear on the proper sentence for a particular defendant, given the crime committed, including the manner or way in which an offender carried out the crime." 301 Kan. at 323-24.

7

Appellate review of a district court's determination whether to grant a departure sentence under Jessica's Law is for abuse of discretion. *State v. Ballard*, 289 Kan. 1000, 1007-8, 218 P.3d 432 (2009).

Our task on appeal is to determine whether the district court sentenced Pulley in conformity with the standard set out in *Jolly.* In this case, the sentencing judge was faced with two disadvantages:  (1) the judge did not have the benefit of the *Jolly* decision, which was issued subsequent to Pulley's sentencing hearing; and (2) the sentencing judge was not the judge who took Pulley's plea, and was thus not aware of the facts which formed the factual basis for Pulley's guilty plea. As a result of these two disadvantages, the sentencing court did not follow the proper statutory method when it sentenced Pulley.

At the sentencing hearing, the district court began the process on the right path—the judge considered each of the statutory mitigation factors as well as the nonstatutory mitigation factors argued by Pulley. However, after reviewing these factors, the court moved immediately to the facts articulated in the probable cause affidavit, noting that the facts alleged in the affidavit "is not what may be called or termed incidental in nature, is not outside the clothes rubbing or touching it is actually allegations of underneath the clothes penetration and other distasteful acts." The court then noted the age of the victim, the close relationship Pulley had with the victim, and the fact that Pulley had a prior diversion for a sex offense.

It seems from the record that the district court improperly considered aggravating circumstances, contrary to *Jolly*. At best, the record is ambiguous as to when the district court completed its determination as to the existence of mitigating factors. Although the State argues that the district court was simply considering mitigating factors in light of the facts of the case, we note that Pulley's prior diversion for a sex offense was not a fact inherent in the crime of conviction and appeared to have been viewed negatively by the district court. Because of the ambiguity in the record, we cannot tell whether Pulley's

8

diversion was considered in the context of determining whether the mitigating factor in K.S.A. 21-4643(d)(1) was met, or if the district court viewed the diversion as an aggravating factor.

In any event, even if we were to presume that the district court was simply considering mitigating facts in light of the facts of the case, further problems arise out of the district court's reference to facts contained in the probable cause affidavit. The second step of the *Jolly* analysis is to determine whether any mitigating factors that are present constitute substantial and compelling reasons for departure given "the facts of the case." 301 Kan. 324. In this case, Pulley was initially charged with rape in addition to the aggravated indecent liberties charge to which he pleaded guilty. As a result of the plea agreement, the rape charge was dismissed.

At the plea hearing, the factual basis admitted to by Pulley was an incident of touching the victim "on the butt." These facts were supplemented by the prosecutor, who provided information regarding the date range and location of the commission of the offense. There were no facts discussed at the plea hearing involving incidents of under the clothes penetration of the victim. We presume that such facts contained in the probable cause affidavit were included to establish probable cause for the rape charge that was subsequently dismissed.

As such, when the district court made reference at the sentencing hearing to "allegations of underneath the clothes penetration and other distasteful acts," it appears as though the district court was considering facts that gave rise to the rape charge that was dismissed by the State. Because the judge presiding over the sentencing hearing was not the same judge who took the guilty plea, the sentencing judge did not know what facts Pulley had conceded by his guilty plea and was therefore not in a position to confine his analysis to those facts which gave rise to Pulley's crime of conviction.

9

The State concedes in its brief that the district court "considered additional facts surrounding the sexual contacts between the defendant and J.S. and not just the facts which supported the offense to which the defendant pled guilty." The State nevertheless argues that "there is no evidence the additional facts are not accurate" and that *Jolly* permits the district court to consider all of these facts when ruling on a departure request.

*Jolly* allows for the district court to consider all of the facts that gave rise to the crime of conviction, even those that are egregious. But it is not proper for the court to consider facts that are merely alleged in connection with a charge that is ultimately dismissed. Those facts have not been established either by admission or by trial. They are simply allegations, and the reason why there is no evidence regarding the accuracy of the allegations is because the State was never required to prove them, and the defendant never admitted to them.

A district court abuses its discretion if its decision is based on an error of fact or law. *State v. Smith*, 299 Kan. 962, 970, 327 P.3d 441 (2014) (abuse of discretion occurs when a ruling is based on an error of law); *State v. Gonzales*, 290 Kan. 747, 757, 234 P.3d 1 (2010) (abuse of discretion occurs when the decision is based on factual determinations not supported by the evidence). In this case, as noted above, the district court did not have the benefit of the *Jolly* decision. Nevertheless, because the district court did not follow the proper statutory method for considering a departure from the presumptive sentence as articulated by *Jolly*, we find that an abuse of discretion has occurred. We therefore vacate Pulley's sentence and remand the case back to the district court for further proceedings consistent with this opinion.

Sentence vacated and remanded with directions.